## In re WATTS AND SACHS, PETITIONERS.

ORIGINAL. HABEAS CORPUS. AND CERTIORARI.

Nos. 15, 16. Argued April 20, 1903.—Decided May 18, 1903.

1. The jurisdiction of the courts in bankruptcy in the administration of the affairs of insolvent persons and corporations is essentially exclusive.
2. The general rule as between courts of concurrent jurisdiction is that property already in possession of the receiver of one court cannot rightfully be taken from him without the court's consent by the receiver of another court appointed in a subsequent suit, and although that rule has only a qualified application when winding up proceedings in a state court are superseded by proceedings in bankruptcy, it obtains as a rule of comity, and its considerate observance is adequate to avert collisions between Federal and state courts.
3. The preservation of the independence of the bar is vital to the due administration of justice, and its members cannot be imprisoned for contempt for error in judgment when advising in good faith and in the honest belief that their advice is well founded.
4. Members of the bar cannot be properly held to have intended to obstruct the administration of justice and to bring the authority of a court of the United States into contempt when it is the orders of a state court appearing to have been entered of record of its own motion that are complained of, and counsel in that court acted in good faith and in the honest discharge of their duty.

M. ZIER & COMPANY, a corporation located at New Albany, Indiana, engaged in the boiler manufacturing business, was

hopelessly insolvent on and prior to December 30, 1902, and
some thousands of dollars had been drawn from its treasury by
the manager of its affairs for the purpose of making certain
payments, of which $3100 had been paid to Ryerson & Son, a
corporation of Chicago, Illinois, and a large creditor of the Zier
Company, previously to December 30, and $9600 was on that
day placed by M. Zier, the manager of the company, in the
hands of his attorney to be paid over to Zier's sister-in-law, who
was a stockholder and creditor of the Zier corporation.   It was
arranged by Zier's attorney with the Chicago corporation on
December 29 that the latter should apply for the appointment
of a receiver of the Zier corporation, and that the New Albany
Trust Company should be appointed receiver, and this resulted
in a complaint filed by the Ryerson corporation, represented by
W. W. Watts, a member of the bar of Kentucky, in the Circuit
Court of Floyd County, Indiana, charging that the Zier Com-
pany was insolvent and was dissipating its property and assets,
and praying for the appointment of a receiver, "and that the
court shall make such orders as shall be necessary and proper
for the preservation of said property, for the continuance of
said business for the purpose of completing unfinished contracts,"
etc., to which defendant voluntarily appeared and consented to
the appointment of the New Albany Trust Company as receiver.
The appointment was accordingly made, and the Trust Com-
pany immediately qualified and proceeded to administer the
estate and wind up its affairs.

On January 16, the Trust Company, as receiver, filed its re-
port and petition, giving an inventory and appraisement of the
assets of Zier & Co., the receipts and expenditures of the re-
ceiver to that date, the particulars in respect of outstanding
contracts; raising the question as to the further operation of
the plant, and advising an order for a meeting of the creditors
to consider that subject; requiring creditors to prove their
claims, and enjoining them from the prosecution of suits except
by intervention.   A list of the creditors was attached, which
included the Inland Steel Company, John C. Thurston, and the
Dey Time Register Company.

The court entered an order directing such meeting to be

held January 24, and notice by mail to be given, which was done, and the meeting was held on that day, a large number of creditors being represented, including the Inland Steel Company. An order was thereupon entered for payment of rent, the completion of unfinished contracts, for the continuance of the operation of the plant to a specified extent, for the issue of certificates of indebtedness to a small amount, but that no new contracts should be made. It was further ordered that creditors be notified by mail and by publication to file their claims on or before May 11, and "that all creditors and other persons be and they are hereby enjoined and restrained from prosecuting any claim or suit against this estate except by intervention in this cause or by first obtaining leave of this court."

February 6, 1903, the Inland Steel Company, John C. Thurston, and John Dey, doing business as Dey Time Register Company, creditors of the Zier corporation to the amounts of $935, $15, and $100, respectively, filed their petition in bankruptcy in the United States District Court for the District of Indiana against that corporation to have it declared a bankrupt. The petition alleged that the company was hopelessly insolvent and had committed, within four months next preceding the filing of the petition, acts of bankruptcy, which were specified. It was further alleged that it was necessary, for the preservation of the estate of Zier & Company and for the benefit of its creditors alike, that a receiver in bankruptcy be appointed at once to take charge of the affairs of said company. On February 11 a further petition was filed by the Inland Steel Company, and, on the same day, a supplemental petition, in which the appointment by the Circuit Court of Floyd County of a receiver and his being put in charge of the insolvent's property, were set up as additional acts of bankruptcy.

The District Court thereupon appointed Frederick D. Connor as receiver, and directed that he should take into his possession the plant of Zier & Company and all its other property, and further ordered that the New Albany Trust Company should deliver up to the receiver all the property of Zier & Company and refrain from in any way interfering with him. The re-

ceiver immediately qualified by giving bond as required by the court.

February 13, 1903, and before the receiver of the District Court had made demand for the property, on learning of Mr. Connor's appointment as receiver, Mr. Watts, after consulting with the local attorneys of 'Zier & Company, communicated with the District Judge and requested that the Federal receiver should not proceed until he, Mr. Watts, could procure an order from the Floyd Circuit Court permitting him to do so, and could come to Indianapolis, and present to the District Judge reasons why the receiver should not have been appointed by that court, and why his order to that effect should be vacated. The District Judge immediately caused the court's receiver and the attorneys interested in the case to be notified to take no further steps until a hearing could be had on the questions suggested by Mr. Watts, on February 16, at Indianapolis. No further action was taken by the receiver of the District Court, but he presented to the Floyd Circuit Court a petition setting forth his appointment and qualification, together with a certified copy of the order appointing him, on the morning of Saturday, February 14, and asked the delivery to him of the property and effects of Zier & Company and the discharge of the Trust Company as receiver. The Floyd Circuit Court entered an order reciting that Connor, as receiver, came by his attorney, " and by leave and order of the court, and upon his own motion, makes himself a party to this proceeding, and thereupon by leave of the court files his verified petition showing his appointment as receiver of said M. Zier & Co. by order of the United States District Court for the District of Indiana," and praying for the surrender of the property, " and the matter of said petition is now continued until the next term of this court." Saturday, February 14, was the last day of the term, and the next term of the court commenced on the ninth day of March.

On the same day, February 14, the Trust Company, by Watts, its attorney, filed its petition, framed by him, which alleged that the Trust Company was carrying out as receiver the terms of the order of January 24; that that order had

been entered without objection from the Inland Steel Company, John C. Thurston or the Dey Register Company, or any creditor; that the three last-mentioned creditors had filed a petition in involuntary bankruptcy against M. Zier & Company, February 6, 1903; that supplemental petitions were filed February 11, 1903, but that the petitions, although setting up the receivership in the state court, had not shown to the United States District Court the participation of the Inland Steel Company in the proceedings of January 24, its appearance, and the restraining order and injunction; that thereupon the order had been obtained in the bankruptcy proceedings appointing Connor receiver, and directing him to take charge of the estate of M. Zier & Company in bankruptcy, and directing the receiver of the state court to deliver up the property. The petition further averred that the creditors whose appearance was noted in the state court on January 24 had claims aggregating $53,279.51; that creditors with claims aggregating $11,622.49 had filed claims with the state court receiver, making a total of $64,902 in amount, so filed or appearing, out of a total liability of $76,463.36; that the total number of creditors was seventy-six; that thirty-seven appeared to the action, and twenty-five, including the Dey Time Register Company, had filed their claims with the state court receiver, making a total of sixty-two creditors who had appeared or filed their claims.

That, with a view to the due observance of the comity existing between the state and the Federal courts, and of avoiding a clash of jurisdiction, petitioner had communicated through its attorneys with the United States District Judge and requested the non-enforcement of his order until after the matters in question had been presented to the state court, with the request that that court direct it and its attorneys to lay said matters before the judge of the District Court, whereupon the District Judge requested counsel to notify the attorneys of the creditors petitioning in bankruptcy that the matter would be heard on Monday, February 16, in Indianapolis, and that in the meantime the order appointing Connor was not to be enforced.

The petition further alleged that the court was about to ad-

journ over to the first day of its next term, March 9; that the order of January 24, directed petitioner as receiver to go on and complete various contracts; that it had entered upon the work; that the operation of the plant was for the beneficial purposes of the estate; and that the stoppage of the plant would involve loss to the creditors and many complicated questions of damage; that it would work great hardship to leave the estate with the court adjourned and without instructions as to what to do; and that the petitioner was this court's officer, and must be ordered and directed by this court only, with respect to the property in its hands.

Petitioner averred that the injunction and restraining order of the state court had been knowingly violated by the Inland Steel Company and the Dey Time Register Company; that these two creditors and all other creditors were estopped from prosecuting the petition in bankruptcy, and from seeking to take from petitioner the assets in its hands as receiver; and that all the creditors were enjoined from prosecuting any attempt to take from the receiver any of the assets in its hands except by leave. And, further, that the record in the District Court of the United States for the District of Indiana did not disclose all the facts regarding the matters herein; that that court had no information as to the restraining orders and estoppels, by entry of appearance, participation, and otherwise. That the assets of the Zier Company were *in custodia legis*; that the parties had submitted themselves to this forum; that the court came into lawful custody of the property, and the orders and proceedings were entered and had before the institution of the bankruptcy proceedings, and the attempt to oust this court and receiver therefrom. Petitioner, therefore, asserted its belief that the District Court, under the peculiar circumstances of the case, would coincide with the state court, if it should deem wise to enter orders specifically restraining the Inland Steel Company, John L. Thurston and the Dey Time Register Company and their attorneys; Connor; and the United States marshal from further prosecuting any matters in relation to the estate or of the taking of the assets in any manner, except by intervention in this action.

Petitioner prayed for instructions; that it should present the facts to the District Court of the United States, either by limited or general appearance in the bankruptcy proceedings, and ask such relief, if any, as this court might direct; and that an injunction be granted. ·

An order was then entered, prepared by Mr. Watts, embodying matters set up in the petition, granting an injunction, ordering the operation of the plant to continue, and directing the receiver, through its attorneys, to proceed to Indianapolis and there by a limited appearance to lay before the District Court the facts with regard to the matters herein, and to suggest to that court the orders of this court, and its belief that with full information of the facts the order of that court would at most have been a direction for application to be made to this court for the delivery of the assets to the receiver, or trustee of the District Court. It was further ordered that the Inland Steel Company, John L. Thurston, and the Dey Time Register Company show cause why they should not be punished for contempt in disobeying the orders of this court by taking action without obtaining leave.

On Monday, February 16, Mr. Watts, with the vice president of the New Albany Trust Company, receiver, appeared in the District Court at Indianapolis, and the proceedings in the state court, including the petition and order of February 14, were laid before that court, and hearing was had that day and on February 17. At the conclusion of the argument the District Judge announced his ruling that the court in bankruptcy had supreme and exclusive jurisdiction in the matter; and asked Mr. Watts and the representative of the Trust Company if it were not better to avoid the clash of jurisdiction by voluntarily turning the property over to the Federal receiver, indicating at the same time that otherwise it would be his duty to exert the power of the court in vindication of its jurisdiction. Mr. Watts and his colleague thereupon announced that the property would be turned over to the Federal receiver. Mr. Watts at the same time stated to the court that he would do all in his power to see that the proceedings in the state court of February 14 were

stricken out, and that he would endeavor to have the state court make an order directing the surrender of the property.

The District Court, on February 17, made the following order:

"This cause coming on now to be heard upon the petition of Frederick D. Connor, filed herein on the 16th day of February, A. D. 1903, for the instruction of the court concerning the property and assets of said M. Zier & Company, which are now in the possession of the New Albany Trust Company, as receiver of the Floyd Circuit Court, in a suit therein pending against said M. Zier & Company, because of their insolvency; and the petitioning creditors in this cause and said Connor, receiver as aforesaid, being now present and represented by George H. Hester and William Wilhartz, their solicitors, and said New Albany Trust Company, receiver as aforesaid, being now present and represented by Henry E. Jewett, its vice president, and by William W. Watts, its solicitor, and after argument by counsel, the said New Albany Trust Company, as receiver of the Floyd Circuit Court, by its said vice president, having voluntarily offered and agreed, by and with the consent and approval of said William W. Watts, its solicitor, in open court, to surrender full and immediate possession and control of the property and assets of said M. Zier & Company, in its possession or under its control, as receiver of the Floyd Circuit Court, to said Connor, as receiver of this court, upon the presentation by him to said New Albany Trust Company of a certified copy of the order for his appointment as such receiver heretofore made by this court. It is now hereby ordered by the court that said Connor, receiver as aforesaid, forthwith present a certified copy of the order for his appointment as such receiver to the said New Albany Trust Company, and immediately thereupon take full possession and control of the property and assets of said M. Zier & Company that are now in the possession or under the control of said New Albany Trust Company, as receiver of the Floyd Circuit Court."

On February 19 the Trust Company by its vice president filed a report in the Floyd Circuit Court, in which it stated that, in pursuance of the order of the court, it had appeared before the

District Judge in Indianapolis on Monday, February 16, and, upon the hearing in that court, the receiver had stated that it was ready and willing to deliver to the receiver appointed by the Federal court all the property and assets of Zier & Company in its hands; that it had not yet been able to make up its accounts as receiver, but was preparing the same to submit to the court, and was willing to turn over all the property to the Federal receiver; and prayed leave from the court to do so. The company further asked that upon the presentation and approval of its accounts as receiver, its resignation be accepted, and that it be fully and finally discharged.

On the same day Connor demanded of the Trust Company the property of Zier & Company in its possession, to which that company at once replied that it had that morning filed before the judge of the Floyd Circuit Court, in chambers, a report, a copy of which was attached; that the judge had stated orally that he wished the property held until the accounts of the Trust Company as receiver were rendered and passed on; that the company thought this might be done the next day, and desired, if Connor was willing, to defer action until then, because it would " relieve us of embarrassment in the premises. On the other hand, if you insist on immediate surrender of the property to you, we are bound to say that we believe that to carry out in good faith the understanding with the Honorable Judge of the United States Court of Indianapolis and our vice president, H. E. Jewett, we ought to surrender the property to you at once." Connor declined to grant further time, and the Trust Company turned over to him the plant of Zier & Company, which constituted all the property of that company except certain books and cash. Connor immediately took possession of the property and put watchmen in charge to hold the same for him.

On February 20 the United States Tube Company presented to the Floyd Circuit Court, " in vacation, at chambers," a petition signed and verified by D. A. Sachs, in which it was set forth that the Trust Company, as receiver, had wrongfully turned over and surrendered the possession of the boiler plant of Zier & Company to Connor, the receiver in bankruptcy, and was

threatening to turn over to Connor all the other assets of Zier
& Company in its hands. Petitioner therefore prayed that the
Trust Company be cited to appear before the court, in chambers,
on the afternoon of that day, and show cause why it should
not be punished for contempt, and that if the court found that
the Trust Company had violated its orders as represented that
it be removed from its office as such receiver and a successor
be appointed ; and that the Trust Company be required to ac-
count immediately and turn over to its successor the property
of Zier & Company. On this petition the judge of the Floyd
Circuit Court on the same day entered an order removing the
Trust Company from the receivership and directing it to ac-
count for the assets of Zier & Company. The order further
provided for the appointment of Charles D. Kelso as receiver
and directed him, on qualification, to demand of the Trust Com-
pany and Connor the immediate possession of the property of
Zier & Company which came into the hands of the Trust Com-
pany as receiver, and should Connor fail or refuse to surrender
the possession of the assets, that he at once report to the judge
for further instructions.

Kelso, having qualified, on the same day reported to the judge
at chambers that he had demanded of the Trust Company the
possession of the assets of Zier & Company, and that the Trust
Company had refused to surrender the possession for the reason
that it had turned over the possession of the plant to Connor,
and that as to the other assets it intended to account forthwith
to the judge of the Floyd Circuit Court ; and that he then de-
manded the property of Connor, who refused to surrender the
same. The state court then entered an order that a writ be
issued, directed to the sheriff of the county, requiring him im-
mediately to seize and deliver to Kelso all the property which
Connor had in his possession, and forthwith to make a return
to the court.

February 21, Connor filed a petition in the District Court, in
which, after setting forth the facts as to the delivery of the
possession of the plant of Zier & Company to him, February 19,
he stated that he retained possession of the same until Feb-
ruary 20, when possession was demanded of him by Kelso, as

receiver appointed by the Floyd Circuit Court, which demand he refused; that he was served with a certified copy of the order of the Floyd Circuit Court, and with a writ issued by that court February 20, to the sheriff, requiring him forthwith to take possession of the plant and the assets; and that the sheriff forcibly took possession thereof, and delivered the same over to Kelso, who was then in possession.

The petition of Connor further stated:

" That this petitioner believes the above-stated proceedings were procured to be had by William W. Watts, Esq., of Louisville, Ky., who during the continuation of the New Albany Trust Company, as receiver of M. Zier & Company, represented said Trust Company as such; that said Charles D. Kelso is now represented by one D. A. Sachs, Esq., of Louisville, Ky., an attorney-at-law, and that the petitioner believes that said Sachs also assisted in procuring the orders of the said Floyd Circuit Court above set out, and the petitioner further says that he verily believes the forcible removal of said property from his possession and control as receiver appointed by this court as aforesaid, was brought about by the joint action and efforts of said Charles D. Kelso, as receiver, and Charles D. Kelso, individually, and William W. Watts, as attorney for said New Albany Trust Company, and D. A. Sachs, attorney for said Charles D. Kelso, receiver."

The petitioner further 1     ·ed that Kelso, as receiver and individually; the sheriff, the deputy sheriff, and the custodian of the plant; and William W. Watts, as attorney for the Trust Company, and D. A. Sachs, as attorney for Kelso, be required and directed to redeliver the property to petitioner, and be cited to appear and show cause why they should not be punished for contempt.

On this petition the District Court, February 21, made an order requiring the parties therein named to appear before it at Indianapolis on February 25 to show cause why they should not redeliver the property, and restraining them from in any way interfering therewith; and further ordering that the parties show cause why they should not be punished for contempt. On the same day, the United States District Attorney

for the District of Indiana filed informations in the District Court against Kelso, Watts, Sachs, and others, for contempt of the District Court in disobeying and disregarding its orders. Watts and Sachs filed separate answers and pleas to the rule to show cause and to the information against them, which were traversed by the United States District Attorney.

William W. Watts, by way of response to the rule, and plea to the information, pleaded that he was not guilty of the alleged contempts stated in the rule and information, or either of them. He denied that he had committed or advised any act of contempt of the orders of the District Court, or that he had in any way, directly or indirectly, or by aiding or advising, forcibly, or in any other way, taken from the receiver in the bankruptcy proceedings the property of Zier & Company, or any part of it, or in any way, by aiding, abetting or advising, had withheld the custody of said property or any part of it. But he said that the orders of the District Court directing its receiver to take the property of Zier & Company into its custody were void because of want of jurisdiction, and that the possession of the property by Connor, receiver, was wrongfully and unlawfully obtained, and the retaking under the orders and writ of the Floyd Circuit Court was a lawful and proper taking.

He then set up the various proceedings hereinbefore enumerated, and the part he took therein; adding: "All this was done solely for the purpose of preventing any possible conflict between the two jurisdictions, and it was believed by this defendant and respondent, and by the said New Albany Trust Company, and by the judge of the Floyd Circuit Court, that upon such presentation, the United States District Court would rescind its said order appointing said Frederick D. Connor, as receiver, and directing him to take possession of said property of M. Zier & Company." Under this authorization he and the Trust Company appeared at Indianapolis on Monday, February 16, and exhibited to the District Court the order of the Floyd Circuit Court authorizing them to appear, and make a full statement of the situation in the state court, after which and extended argument, the District Judge refused in any way to reconsider, modify or set aside his order, and demanded of

the representative of the Trust Company whether or not it would turn over the property, and of defendant and respondent whether or not he, as counsel for the Trust Company, would advise it to turn the property over, to Connor, as receiver. " Under these circumstances and not otherwise, and believing that the said demand of said judge of the said United States District Court was peremptory, this defendant and respondent, as counsel for the said New Albany Trust Company, stated that he would advise the said New Albany Trust Company to turn over the said property to the said Frederick D. Connor, receiver." On February 17, defendant and the vice president of the Trust Company left Indianapolis, and defendant supposed that it was not necessary for any order respecting the hearing in the District Court February 16 and 17 to be entered, and that no order would be entered. But an order was entered, a fact which he learned several days thereafter.

Defendant, further answering, alleged that on February 19 defendant and the Trust Company, receiver, appeared before the judge of the Floyd Circuit Court, in chambers, and defendant, as attorney for the Trust Company, then filed before the judge of that court a written petition and motion, setting forth what had passed at Indianapolis, in view of which he moved to strike out and expunge from the files the petition and order of February 14, 1903. This was particularly desired, because the District Judge seemed to regard the petition and order as offensive. That defendant was in every way in good faith endeavoring to carry out the understanding at Indianapolis, and advised, and at no time gave any contrary advice, the Trust Company to turn over to Connor, receiver, all the property of the Zier Company. The response and plea further averred that Watts was much embarrassed by the condition of affairs and felt that the judge of the Floyd Circuit Court might misconstrue his actions in the premises, and before going to New Albany on February 19, 1903, requested his friend, D. A. Sachs, a lawyer residing in Louisville, Kentucky, to accompany him for the purpose of explaining his action to the judge of the Floyd Circuit Court, and this Sachs accordingly did. But the judge of that court was not satisfied, and entered a rule on

Watts to show cause " why he should not be punished· for contempt."

On the same day the Trust Company filed its separate petition, praying for leave to turn over the property, and for its discharge in the premises on the approval of its accounts.   But the judge cited it also to show cause.

The pleading further set forth the communication of the Trust Company to Connor, receiver, and the delivery of the property to him; and that on February 20 defendant appeared before the judge of the Floyd Circuit Court in obedience to his request.   On that day an order was entered removing the Trust Company as receiver, and appointing Charles D. Kelso as receiver in its stead,· and authorizing him to demand of Connor· the property of Zier & Company.   Before that order was entered the Trust Company had, in fact, under the advice of .Watts, turned over the property to Connor, and the response and plea asserted that defendant did not advise, aid, connive at, or abet the entry of said order, and had nothing whatsoever to· do with it.

The response and plea further set forth the report of Kelso, and the entry of an order.directing the issue of a summary writ to the sheriff of Floyd County, and stated : " This defendant and respondent did not procure the entry of .said order or connive at.its entry or advise its entry, and did not know of its entry until after it had been entered.   He had no connection whatever with it."

Defendant and respondent reiterated that all of his acts and doings and advice after his appearance at Indianapolis were ·with the single purpose of having the Trust Company turn over all the property and effects to the receiver of the District Court, ·and that he did nothing and said nothing and advised nothing which would in any way .delay the execution of that purpose; that he did nothing and said nothing with reference to the removal of the Trust Company or the removal of Kelso, and in no way·did he advise anything looking to the retaking of said property from the hands of said Connor, receiver, and with all these matters he had nothing to do.   Transcripts of the records were attached as exhibits.

By his separate response and plea, D. A. Sachs denied the commission of any act, or the advising or consenting to the commission of any act, in disobedience of any order of the court in the bankruptcy case, or that he had aided, abetted or advised the taking from the receiver the property of Zier & Company, or in any way disobeyed or disregarded, or aided or abetted the disregarding of, the orders or decrees of the District Court, or been guilty of any contempt in the case.   He said that he first heard of the proceedings on February 18 from Mr. Watts, and appeared before the state judge and attempted to explain the matter simply as his friend.   He at no time advised disobedience or disregard of the orders of the District Court or the taking of the property from Connor, but on the contrary advised against that course; and "that all he did in this matter was without fee or any consideration whatever except through friendship to said Watts."   He then believed and is still of the opinion that the receiver of the Floyd Circuit Court had the rightful possession of the property, and that the District Court did not have the right or authority to interfere therewith in the summary way pursued herein.   The response then set forth the various proceedings in both courts, and respondent asserted that on Monday, February 23, 1903, he learned for the first time of the making of the order in the District Court dated February 17.   He denied that he had anything to do with the proceedings other than the action he took with a view of extricating Mr. Watts from the complications, and " with a view of avoiding any action that might be justly construed as a violation of the orders of either court."   He denied knowledge of a petition or order for the property to be seized, and had nothing whatever to do in any way with the procuring or execution of such an order or with the forcible taking of the property or any part thereof from the receiver.

The responses and pleas having been traversed, evidence, documentary and oral, was adduced at considerable length, and on March 14, 1903, the District Court found Watts and Sachs each guilty of contempt as charged in the information and rules, and sentenced each of them to confinement in the jail of Marion County for sixty days and to pay costs.

In the meantime the property had been restored to Connor, receiver, the $9600 had been paid over to him, and Zier & Company had been adjudicated bankrupt.

Petitions by Watts and Sachs for writs of *habeas corpus* and of certiorari, setting forth the foregoing matters and things, were thereupon presented to this court, leave given to file them, and the writs thereupon issued, and it was directed that each of the petitioners be admitted to bail on his personal recognizance in the sum of $500, to be entered into before the judge of the United States court for the District of Indiana.

*Mr. David Fairleigh*, with whom *Mr. Bernard Flexner* was on the brief, for the petitioner Watts.

I. When a person is imprisoned by a United States court for refusing to comply with an order of that court, and such order is beyond the jurisdiction or power of the court to make, the order itself is void, and the order punishing for contempt is likewise void, and this court will, on writ of *habeas corpus*, discharge the person so imprisoned. *Ex parte Lange*, 18 Wall. 163; *Ex parte Rowland*, 104 U. S. 604; *Ex parte Fisk*, 113 U. S. 713; *In re Ayres*, 123 U. S. 443; *In re Lane*, 135 U. S. 443; *In re Tyler*, 149 U. S. 164; *In re Bonner*, 151 U. S. 242; *In re McKenzie*, 180 U. S. 536.

II. An order of a United States District Court sitting in bankruptcy, commanding its receiver to peremptorily take from the possession of a receiver of a state court property in his hands as such at the time the bankruptcy proceedings were begun, is void. *Peck* v. *Jenness*, 7 How. 611; *Taylor* v. *Carryl*, 20 How. 583; *Marshall* v. *Knox*, 16 Wall. 551; *Doe* v. *Childress*, 21 Wall. 643; *Covell* v. *Heyman*, 111 U. S. 182; *Shields* v. *Coleman*, 157 U. S. 168; *Johnson, Assignee*, v. *Bishop, Sheriff*, Woolworth, 324; *Metcalf* v. *Barker*, 187 U. S. 165; *Pickens* v. *Roy*, 187 U. S. 177; *Louisville Trust Co.* v. *Comingor*, 184 U. S. 18; *Bardes* v. *Hawarden Bank*, 178 U. S. 524.

III. A receiver appointed by a court has no authority to surrender the possession of the property in his hands without authority from the court which appointed him, and the person who so acquires the possession of the property from him is in

wrongful possession, and the court may issue an appropriate writ to restore the possession of the property to a custodian of the court. *Davis* v. *Gray*, 16 Wall. 217; *Shields* v. *Coleman*, 157 U. S. 168; *White* v. *Schloerb*, 178 U. S. 542; *Metcalf* v. *Barker*, 187 U. S. 165.

*Mr. W. H. H. Miller*, with whom *Mr. W. M. Smith* was on the brief, for the petitioner Sachs.

1. The Floyd Circuit Court was in the lawful, actual possession of the property in controversy when the bankruptcy proceeding commenced. *First National Bank* v. *U. S. Encaustic, etc.*, 105 Indiana, 227; *Pressley* v. *Lamb*, 105 Indiana, 171. The fact of actual possession is undisputed.

This proceeding in the state court is not subject to collateral attack. *Phelps* v. *Mutual Reserve, etc.*, 112 Fed. Rep. 453; *Weiss* v. *Guerineau*, 109 Indiana, 438; *Hollinger* v. *Reeme*, 138 Indiana, 363.

The suit in the state court was not under an "insolvency law." *Mayer* v. *Hellman*, 91 U. S. 496; *Carling* v. *Seymour*, 113 Fed. Rep. 483.

It is idle to say that the filing of the bill and procurement of the appointment of a receiver was a fraud on the state court because preferences had been given; since, in the absence of bankruptcy proceedings, the preferences were lawful. *Sandford Fork, etc.*, v. *Howe*, 157 U. S. 312, 317; *McCormick* v. *Smith*, 127 Indiana, 230, 235. It was uncertain whether bankruptcy proceedings would ever be commenced.

2. The rules of comity between the state court and the United States District Court sitting in bankruptcy apply in all their breadth and force. *Peck* v. *Jenness*, 7 How. 612 (Bankrupt Act, 1841); *Eyster* v. *Gaff*, 91 U. S. 521 (Bankrupt Act, 1867); *Metcalf* v. *Barker*, 187 U. S. 165 (Bankrupt Act, 1898); *Carling* v. *Seymour*, 113 Fed. Rep. 483.

If the possession of the state court is actual, the fact, (if it be a fact,) that the jurisdiction of the bankruptcy court is exclusive does not warrant the latter court in taking the possession from the state court by summary proceedings. *Moran* v. *Sturges*, 154 U. S. 256; *The Oliver Jordan*, 2 Curtis, 414; *Taylor* v.

*Carryl,* 20 How. 583; *The E. L. Cain,* 45 Fed. Rep. 367; *The James Roy,* 59 Fed. Rep. 784; *Carling* v. *Seymour Lumber Co.,* (C. C. A. 5th Cir.) 113 Fed. Rep. 483, 490, 491, reversing same case, *In re Macon, etc.,* in 112 Fed. Rep. 323, where the District Court seems to have held opinions similar to those of the District Court in the case at bar. See also, *Temple* v. *Glasgow,* (C. C. A. 4th Cir.) 80 Fed. Rep. 443–446.

3. And the fact that the suit in the state court was not based on a valid lien is immaterial. The power of the bankruptcy court is as plenary when there are liens as when there are not. Rev. Stat. § 4972 (act 1867); sections 2 and 69, act 1898; *Johnson* v. *Bishop,* 1 Wool. 324; *Bradley* v. *Frost,* 3 Dillon, 457; *In re Price,* 92 Fed. Rep. 987; *In re Lingert,* 110 Fed. Rep. 927; *In re Lesser,* 100 Fed. Rep. 433; *In re Wells,* 114 Fed. Rep. 222; *In re Ward,* 104 Fed. Rep. 985; *Smith* v. *Belford,* 106 Fed. Rep. 658; *Louisville Trust Co.* v. *Comingor,* 184 U. S. 18.

For discussion of rule of comity, *Covell* v. *Heyman,* 111 U. S. 176.

4. The act of 1898 (as well as that of 1867) provides for intervention by representative of bankruptcy court in a suit in a state court. Section 11, sub. *b* and *c.*

5. This was actually done in case at bar by a general appearance.

6. This being done, the bankruptcy court was bound to await the decision of the state court in the ordinary way. *Peck* v. *Jenness,* 7 How. 612, 625; *Johnson* v. *Bishop,* 1 Wool. 324; *Doe* v. *Childress,* 21 Wall. 643; *Scott* v. *Kelly,* 22 Wall. 57; *Mays* v. *Fritton,* 20 Wall. 414; *Davis* v. *Friedlander,* 104 U. S. 570; *Winchester* v. *Heiskell,* 119 U. S. 450; *Adams* v. *Crittenden,* 133 U. S. 296; *Ludeling* v. *Chaffe,* 143 U. S. 301.

The bankruptcy court never got lawful possession of the property. *a.* Because such possession as it got from the state court's receiver was the result of a threat to take it with "a club." *b.* Because the state court receiver could not deliver lawful possession without the consent of his court. This is elementary. *Shields* v. *Coleman,* 157 U. S. 168; *White* v. *Schloerb,* 178 U. S. 542; *Metcalf* v. *Barker,* 187 U. S. 165; *The*

*E. L. Cain,* 45 Fed. Rep. 367–370; *The James Roy,* 59 Fed. Rep. 784; *Moran* v. *Sturges,* 154 U. S. 256.

7. The amendment to the bankrupt act of February 5, 1903, making a receivership an act of bankruptcy, is not retroactive so as to apply to this case. All bankrupt acts have been prospective as to acts of bankruptcy. Act 1841, 5 Stat. 442; Act 1867, 14 Stat. 536; Act 1898, sec. 71; *Chew Hong* v. *United States,* 112 U. S. 536, 559; Endlich on Statutes, 276; *McEwan* v. *Den,* 24 How. 245. If the amendment is not retroactive, this receivership was not an act of bankruptcy. *In re Wilmington Hosiery Co.,* 120 Fed. Rep. 180; also 179.

*Mr. George H. Hester* (by special leave), with whom *Mr. William Wilhartz* was on the brief, for the receiver in bankruptcy of M. Zier & Co.

All state laws for the administration of insolvents' estates and all actions and proceedings thereunder are suspended by the enactment of the general bankruptcy law. *In re Smith,* 92 Fed. Rep. 135; *Tua* v. *Carriere,* 117 U. S. 201–209; *In re Bruss-Ritter Co.,* 90 Fed. Rep. 651; *Lea* v. *George M. West Co.,* 91 Fed. Rep. 237; *In re Rouse, Hazard & Co.,* 91 Fed. Rep. 96; *Lothrop* v. *Highland Foundry Co.,* 128 Massachusetts, 120; *Parmenter Mfg. Co.* v. *Hamilton,* 172 Massachusetts, 178; *Harbaugh* v. *Costello,* 184 Illinois, 110; *In re Gutwillig,* 90 Fed. Rep. 475.

The jurisdiction of the Federal courts over the administration of insolvent estates is exclusive and supreme. *In re Merchants Insurance Co.,* 6 N. B. R. 43; *In re Smith,* 92 Fed. Rep. 135; *Harbaugh* v. *Costello,* 184 Illinois, 110; *Watson* v. *Bank,* 11 N. B. R. 161.

The Bankruptcy Act of 1898 authorizes the District Court " to make such orders, issue such process and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of this act."

The jurisdiction of the bankruptcy court being supreme, it may properly, by summary process, obtain possession of property in the hands of an assignee or other officer of a state court. *In re John A. Etheridge Furniture Co.,* 92 Fed. Rep. 329;

*White* v. *Schloerb*, 178 U. S. 542; *Bryan* v. *Bernheimer*, 181 U. S. 188; *Mueller* v. *Nugent*, 184 U. S. 1; *In re Tune*, 115 Fed. Rep. 906; *In re Green Pond R. Co.*, 13 N. B. R. 118; Fed. Cas. No. 5786; *In re Safe Deposit and Sav. Inst.*, 7 N. B. R. 392; Fed. Cas. No. 12,211; *In re Washington Marine Ins. Co.*, 2 Ben. 292; Fed. Cas. No. 17,246; *In re Merchants Ins. Co.*, 3 Biss. 162; Fed. Cas. No. 9441; *In re National Life Ins. Co.*, 6 Biss. 25; Fed. Cas. No. 10,046; *In re Whipple*, 6 Biss. 516; Fed. Cas. No. 17,512; *In re Smith*, 92 Fed. Rep. 135; *Clarke* v. *Larremore*, 188 U. S. 486.

Summary proceedings are also authorized to take property from the hands of a receiver of a state court. *In re Merchants Ins. Co.*, 6 N. B. R. 43; *In re Lengert Wagon Co.*, 110 Fed. Rep. 927; *In re Storck Lumber Co.*, 114 Fed. Rep. 360; *In re Bruss-Ritter Co.*, 90 Fed. Rep. 651; *Platt* v. *Archer*, 9 Blackf. 559; Fed. Cas. No. 11,215.

The proceeding in the state court for the appointment of a receiver of M. Zier & Co. was, in substance, a voluntary assignment, or bankruptcy proceeding. Every asset of the insolvent was placed by it in the hands of the receiver selected by it. The purpose was the distribution of these assets among all its creditors. *In re John A. Etheridge Furniture Co.*, 92 Fed. Rep. 329; *In re Storck Lumber Co.*, 114 Fed. Rep. 360.

The cases at bar do not involve either the question of property held by adverse claim, or that of a lien attaching more than four months previous to the bankruptcy proceedings. The following cases relied on by the petitioners are not, therefore, in point: *Peck* v. *Jenness*, 7 How. 625; *Louisville Trust Co.* v. *Comingor*, 184 U. S. 18; *Metcalf* v. *Barker*, 187 U. S. 165.

The state court having no jurisdiction whatever after the filing of the petition in bankruptcy, it had no power to hear and determine the question of whether or not it would relinquish the property. It became its duty to do so at once, upon being informed of the proceedings in the United States court, and every step taken thereafter with reference to the property and its custody was *coram non judice*.

If a receiver is appointed by a Federal court and actually

takes possession of the property, possession will not be yielded to a receiver subsequently appointed by a state court, although the suit in the state court was commenced before that in the Federal court. *East Tenn., Virginia & G. R. Co.* v. *A. & T. R. Co.*, 49 Fed. Rep. 608; *Central Trust Co. of N. Y.* v. *Chattanooga R. Co.*, 69 Fed. Rep. 950.

Where a state court has no jurisdiction over property and loses the actual possession thereof to the Federal court, there remains no possession by the state court, either actual or constructive. *The Willamette Valley*, 62 Fed. Rep. 293; 66 Fed. Rep. 565; *Moran* v. *Sturges*, 154 U. S. 256, 293.

Where there is neither actual nor constructive possession there can be no obstacle to proceeding summarily, and an action thus taken cannot be invalidated by relation. *Moran* v. *Sturges*, 154 U. S. 256, 284.

The bankruptcy court having been given voluntary and peaceable possession, the question of comity between the courts is not involved, except as it applies to the action of the state court in retaking the property. It is a question of the supremacy of the Constitution and laws of the United States. *In re Tune*, 115 Fed. Rep. 906; *East Tenn., etc., R. Co.* v. *A. & T. R. Co.*, 49 Fed. Rep. 608.

Where property is in the custody of the bankruptcy court, no other court, and no person acting under any process from any other court, can, without the permission of the bankruptcy court, interfere with it; and to so interfere is a contempt of the bankruptcy court. *In re Vogle*, 7 Blackford, 18; *Moran* v. *Sturges*, 154 U. S. 256; *Freeman* v. *Howe*, 24 How. 450, 459.

*Mr. Solicitor General Hoyt* for the United States.

I. The argument of counsel for petitioners relates exclusively to the manner in which the District Court exercised its jurisdiction over the property in dispute.

The power of a bankruptcy court to enforce its jurisdiction by contempt proceedings is unquestioned. Whether the facts presented warranted petitioners' conviction and the punishment imposed, were matters within the judgment of the District

Court to determine, as they are within the power and discretion of this court to review. Acts similar to those committed by petitioners have been held to constitute contempt in the following cases: *In re Vogel*, 2 N. B. R. 427; Fed. Cas. 16,983; *In re Ulrich*, 8 N. B. R. 15; Fed. Cas. 14,328; *In re Litchfield*, 13 Fed. Rep. 186; *Ex parte Davis*, 112 Fed. Rep. 139; *Royal Trust Co.* v. *Washburn, etc., Ry. Co.*, 113 Fed. Rep. 531. See particularly *Anderson* v. *Comptois*, 48 C. C. A. 1, and note, p. 7; also reported in 109 Fed. Rep. 971.

II. Upon the filing of the petition in bankruptcy the jurisdiction of the District Court immediately attached, and was exclusive. *In re Merchants' Ins. Co.*, 6 N. B. R. 43; *In re Lady Bryan Mining Co.*, 6 N. B. R. 252; *Watson* v. *Citizens' Savings Bank*, 11 N. B. R. 161; *In re Gutwillig*, 90 Fed. Rep. 475; *In re Bruss-Ritter Co.*, 90 Fed. Rep. 651; *In re Rouse & Co.*, 91 Fed. Rep. 96; *Lea* v. *George M. West Co.*, 91 Fed. Rep. 237; *In re Smith*, 92 Fed. Rep. 135; *In re Etheridge Furniture Co.*, 92 Fed. Rep. 329; *In re Richard*, 94 Fed. Rep. 633; *In re Lengert Wagon Co.*, 110 Fed. Rep. 927; *In re Storck Lumber Co.*, 114 Fed. Rep. 360; *Parmenter Mfg. Co.* v. *Hamilton*, 172 Massachusetts, 178; *Harbaugh* v. *Costello*, 184 Illinois, 110.

Only a pretense of argument is made against the jurisdiction of the District Court over the property of the bankrupts. Within four months prior to the filing of the petition they had committed acts of bankruptcy by making preferences denounced by the statute. Besides, the amendment of February 5, 1903, to the Bankruptcy Act makes the appointment of a receiver by a state court because of insolvency an act of bankruptcy. That amendment is on its face retroactive, and applies to a case where a receiver "has been" appointed within four months of the filing of the petition in bankruptcy. In the original act, a retroactive effect was expressly provided against, and proceedings commenced under state insolvency laws before its passage were explicitly not to be affected, but the amendatory act contains no such provision.

That the jurisdiction of the District Court is not seriously attacked, is shown by the fact that opposing counsel frankly

state that the question here is not as to the right of possession, but of proper procedure.

III. The question as to the authority of a bankruptcy court summarily to take property over which it has acquired jurisdiction from the possession of a state court or its officers, does not arise on this record. The District Court did not summarily seize the property but the same was voluntarily surrendered to its receiver. The fact that the receiver of the state court was not authorized to make the transfer, does not affect the legality of the possession received by the District Court, but was a matter wholly between the state court and its receiver. An order of the state court directing the surrender of the property could give the District Court no additional right to the possession. That right was already perfect.

IV. Assuming, however, for the sake of argument, that the property was summarily taken from the state court, it is apparent that, under the decisions of this court, summary action in such a case was authorized. The attitude of the state court toward the Federal court is indicated by the order enjoining the bankrupt's creditors from proceeding in any other court.

The attempt to defeat the jurisdiction of the District Court is evident.

The necessity for prompt and forcible action by the Federal courts, in order to enforce the provisions of the National Bankruptcy Law, when one exists, even as against the state courts, is recognized by section 720 of the Revised Statutes, which provides :

" The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

Among the powers conferred upon the courts of bankruptcy by section 2 of the act of 1898, are—" to (15) make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this act." 30 Stat. 546.

The twelfth general order in bankruptcy provides : " 3. Applications . . . for an injunction to stay proceedings of a

court or officer of the United States, or of a State, shall be heard and decided by the judge."

And section 2, clause 3, of the act of July 1, 1898, authorizes courts of bankruptcy to "appoint receivers or the marshals, upon application of parties in interest, in case the courts shall find it absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified."

A forced conception of what constitutes "proper procedure" should not, therefore, be allowed to defeat the Federal jurisdiction.

V. It is not asserted that the rule of comity does not apply to bankruptcy cases. On the contrary, the importance of a due observance of that rule is fully recognized. But it is contended that the rule of comity has its limitations; that it is not so one-sided as to operate only on the Federal court, and that it ceases to apply when the state court becomes remiss in its duty.

Counsel urge that the proper course is to appeal to the highest court of the State, and thence, if necessary, to this court. In the meantime the property of the bankrupt might be dissipated or destroyed. It would be curious, indeed, if the administration of the National Bankruptcy Law could be thus defeated by a state court. What would then become of the supremacy of the Constitution and laws of the United States? How does this view agree with the "incontrovertible principle that the Government of the United States may, by means of physical force, exercised through its official agents, execute on every foot of American soil the powers and functions that belong to it?" *Ex parte Siebold*, 100 U. S. 395.

The doctrine of *Peck* v. *Jenness*, 7 How. 611, and *Johnson* v. *Bishop*, Woolworth, 324, is not so much a rule of comity as a rule of law, and applies only to cases in which the state court had full and complete jurisdiction, or where the jurisdiction of the state court is concurrent, such as suits to enforce valid pre-existing liens, or suits by assignees in bankruptcy to recover property of a bankrupt in the hands of an adverse claimant.

VI. But the authority of receivers or marshals in bankruptcy

is not to be measured by that of assignees under the act of 1867 or trustees under the present act.

The observation in *Bardes* .v. *Hawarden Bank*, 178 U. S. 531, that courts of bankruptcy could hardly be considered as empowered by the provisions of the Bankruptcy Act to authorize receivers or marshals forcibly to seize property in the hands of adverse claimants, was stated to have been an inadvertence and therefore withdrawn in the subsequent case of *Bryan* v. *Bernheimer*, 181 U. S. 189, 197.

It seems plain that in *Bryan* v. *Bernheimer*, the court perceived that, since receivers or marshals were only to be appointed " in case it is necessary for the preservation of the property of the bankrupt," the right to authorize them to proceed summarily might in some cases be absolutely essential to the accomplishment of that purpose.

In *White* v. *Schloerb*, 178 U. S. 542, it was held that the District Court sitting in bankruptcy had authority, by summary proceedings, to compel the return of property taken from it on a writ of replevin from a state court, sued out after the jurisdiction of the District Court had attached. It is true that in *Metcalf* v. *Barker*, 187 U. S. 165, the court said that " this cautious utterance . . . sustains, as far as it goes, the converse of the proposition when presented by a different state of facts." In *White* v. *Schloerb* the District Court, at the time of the seizure of the property by the state court, not only had the possession of the property, but the right of possession as well. In the present case, at the time of the alleged seizure of the property by the District Court, the state court had absolutely no right of possession. In this respect it may indeed be said that this case is the converse of *White* v. *Schloerb*.

The destinction between cases where the state court has jurisdiction and where it has none, was pointed out in *Clarke* v. *Larremore*, 188 U. S. 486, decided February 23, 1903. In that case the right of the bankruptcy court to enjoin the officers of a state court and summarily take possession of property in their hands, when necessary to the enforcement of the exclusive jurisdiction in bankruptcy, is distinctly recognized.

The possession of the state court was in virtue of the title

of this bankrupt.   A mere refusal to surrender does not constitute an adverse holding.   *Mueller* v. *Nugent*, 184 U. S. 1.

VII. The possession of the District Court being coupled with exclusive right, could not afterwards be disturbed, even by the court from which it was taken, unless it be that two wrongs make a right.   In no case has it been held that a court which has been summarily dispossessed by another court having the exclusive right of possession, may retake what it has no further right to hold.   It is futile to say that the "constructive possession" remains in the state court.   Constructive possession is necessarily dependent on the right of possession, and at the time of the recaption, the right of possession, as well as the actual possession, was in the District Court.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

In this matter writs of certiorari as well as of *habeas corpus* were issued, and the record returned to us includes the evidence below, which was duly preserved by bill of exceptions.   The District Court held that a flagrant contempt of the court in bankruptcy was committed on the twentieth of February by the taking of the property of Zier & Company out of the possession of its receiver, in whose hands, in the view of the court, it had been voluntarily placed; and that defendants Watts and Sachs were so connected with that transaction as to subject them to like condemnation.

The New Albany Trust Company was appointed receiver of the property of Zier & Company under section 1245 of the Revised Statutes of Indiana, Thornton's Rev. Stat. of 1897, providing that this might be done, "when a corporation has been dissolved, or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights;" and it was directed to complete unfinished contracts but to make no new ones.   The winding up of the business was contemplated and entered upon.   Whether the transfers of $3100 and $9600 could have been overhauled in that suit we need not inquire, as they were undoubtedly acts of bankruptcy, and as such justified the

application to the bankruptcy court. And the operation of the bankruptcy laws of the United States cannot be defeated by insolvent commercial corporations applying to be wound up under state statutes. The bankruptcy law is paramount, and the jurisdiction of the Federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive. Necessarily when like proceedings in the state courts are determined by the commencement of proceedings in bankruptcy, care has to be taken to avoid collision in respect of property in possession of the state courts. Such cases are not cases of adverse possession, or of possession in enforcement of preexisting liens, or in aid of the bankruptcy proceedings. The general rule as between courts of concurrent jurisdiction is that property already in possession of the receiver of one court cannot rightfully be taken from him without the court's consent, by the receiver of another court appointed in a subsequent suit, but that rule can have only a qualified application where winding up proceedings are superseded by those in bankruptcy as to which the jurisdiction is not concurrent. Still it obtains as a rule of comity, and accordingly the receiver of the District Court brought his appointment to the knowledge of the Floyd Circuit Court and requested the delivery of the assets.

We think there can be no reasonable doubt that the judge of the Floyd Circuit Court and Messrs. Watts and Sachs entertained the conviction in good faith that the custody of the state court could not be lawfully interfered with by the bankruptcy court by summary proceedings. Their view was that the jurisdiction of the state court having attached, that court was, in all circumstances, entitled to exercise it until voluntarily surrendered. But if the state court had taken into consideration that Zier & Company had committed acts of bankruptcy in the matter of preferential transfers; that the amendatory bankruptcy act of February 5, 1903, provided that acts of bankruptcy would exist if a person "being insolvent, applied for a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a State, of a Territory, or of the United

States;" and that the intent of the bankruptcy law is to place the administration of affairs of insolvents exclusively under the jurisdiction of the bankruptcy courts, it appears to us that instead of continuing the application of the Federal receiver for three weeks, the court should have directed the surrender of the property to him at once, or at least after the report of its own receiver on returning from Indianapolis.

The state court, however, did not approve of the assurance given by its receiver at Indianapolis, and refused to allow the surrender of possession, so that the delivery to Connor by the Trust Company presently made was unauthorized by the court, whose receiver and officer the Trust Company was.

We are not now dealing with the right of the District Court to take possession *in invitum*, but with the voluntary delivery of property by the officer of a court, without the court's consent, and, therefore, unlawful. We say, " voluntary," for we decline to entertain the suggestion that the District Court intimidated the Trust Company and Watts, or that members of the bar can be intimidated in the discharge of their duty.

It is true that the state court had authorized the Trust Company and Mr. Watts to appear at Indianapolis and explain the situation, but in doing so it was attempted to limit the operation of the' order to a special appearance in the bankruptcy court, while by the order continuing the Federal receiver's application it was attempted to make him a party to the proceedings in the state court and bound by them. Obviously the state court did not wish its receiver to be bound by going before the District Court, and did wish the receiver of the District Court to be bound by his appearance in the state court.

On the other hand the District Court made an order on February 17, which recited the presence of the Trust Company and of Watts, the voluntary offer of the Trust Company, with the approval of Watts, in open court, to surrender possession, and then directed Connor to present a certified copy of the order of February 11 to the Trust Company, and thereupon to take possession. Mr. Watts had no notice or knowledge of this order until February 23, and Sachs first saw it on that day, though he was informed of its existence February 22.

The situation February 19 was this: The Trust Company and Watts were under rules to show cause for disregard of the orders of the state court. One had done, and the other had advised the doing, that which the state court had not consented to, and it was after it had signified its disapproval that the District Court receiver obtained possession without such consent. The state court thereupon concluded that it was entitled to restore the *status quo,* and accordingly it entered the orders of February 20, under which Connor was dispossessed.

This was a reassertion of the jurisdiction which the state court insisted it was entitled to exercise, that it had not voluntarily parted with, or been lawfully deprived of.

The petitioners were sentenced to imprisonment for contempt because of their alleged participation in this action of the state court.

It is the action of the state court that was complained of, and the essence of the alleged contempt was that, assuming that action was taken pursuant to the advice of these attorneys, they were liable to condemnation for giving such advice. In the ordinary case of advice to clients, if an attorney acts in good faith and in the honest belief that his advice is well founded and in the just interests of his client, he cannot be held liable for error in judgment. The preservation of the independence of the bar is too vital to the due administration of justice to allow of the application of any other general rule.

But here we do not have the ordinary case of advice to clients, but the case of judicial action alleged to have been induced by the advice complained of. The theory of the condemnation is that of conspiracy between the state court and the attorneys to obstruct the administration of justice and to bring the authority of the United States court into contempt.

We are of opinion that such charges ought never to be indulged in, and that the ultimate consequences of attacks of such a character by the courts of one government on the courts of another are too serious to allow them to be made.

The state court was a court of original general jurisdiction. On the face of its record its jurisdiction had been properly invoked and been properly exercised and was not open to col-

lateral attack. Assuming that the proceedings in bankruptcy superseded further proceedings in the state court, and that nothing remained for the latter but to direct the surrender of the assets and the winding up of the accounts, the District Court was of opinion that it might by summary proceedings take the assets out of the possession of the state court. But Connor's possession was not acquired in that way. The contention is that the property was given up voluntarily by the state court receiver and not in obedience to any order entered on summary proceedings to which that receiver was a party. And the difficulty is that the receiver had no power to make the surrender when it was made. It was the representative of the state court. The property in its hands was property *in custodia legis*, and it had only such authority as was given to it by the court, and could not exceed the limits prescribed by the court. Without doubt the receiver agreed to give up the property in its hands to the receiver of the court in bankruptcy on the supposition that the state court would assent to its doing so. But the state court took a different view, and therefore the possession of Connor was from its standpoint a wrongful possession.

In order to the adequate enforcement of the provisions of the bankruptcy law, it is necessary that the powers of courts in bankruptcy should be, as they are, most comprehensive.

Section 720 of the Revised Statutes provides: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

By section two of the bankruptcy act of 1898 the bankruptcy courts are empowered to "(3) appoint receivers or the marshals, upon application of parties in interest, in case the courts shall find it absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified;"
. . . "(13) enforce obedience by bankrupts, officers, and other persons to all lawful orders, by fine or imprisonment or fine and imprisonment;" . . . "(15) make such orders,

issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act."

The twelfth general order in bankruptcy provides : " 3. Applications . . . for an injunction to stay proceedings of a court or officer of the United States or of a State shall be heard and decided by the judge."

But no writ of injunction as such was granted in this case. The order of February 11, for the appointment of a receiver, provided that the Trust Company should deliver up the property to the Federal receiver and should refrain from interfering with his possession and control of the same. That order was entered on the application of the Inland Steel Company, which had appeared in the state court at the creditors' meeting of January 24, and had interposed no objection to the order then entered for the completion of pending contracts and the running of the plant for that purpose. It was one of the contentions in support of the jurisdiction of the state court that the Inland Steel Company was thereby estopped from resorting to the bankruptcy court and obtaining the appointment of a receiver there. In *Simonson* v. *Sinsheimer*, 95 Fed. Rep. 948, it was held by the Circuit Court of Appeals for the Sixth Circuit, in a careful opinion by Taft, J., that a creditor might be estopped from filing a petition in involuntary bankruptcy, in the circumstances therein detailed, and *In re Curtis*, 91 Fed. Rep. 737, and 94 Fed. Rep. 630, in which a different conclusion was reached, was distinguished. We express no opinion on the matter, but it should be noted, in passing, as one of the elements of controversy entering into the views of counsel in the state court.

The completion of contracts by the state receiver and the procuring of materials therefor had been authorized at the creditors' meeting, in which the petitioning creditor participated, and the work had been entered upon, and it is possible that a state of facts might have existed which would involve the application of the doctrine of estoppel to some extent.

We do not understand it to be contended that the passage of the bankruptcy act in itself suspended the statute of Indiana

in relation to the appointment of receivers, but only that when the proceedings for such appointment took the form, as they did here, of winding up the affairs of the insolvent corporation, the proceedings in bankruptcy displaced those in the state court and terminated the jurisdiction of the latter. But the accept- ance of that view does not necessarily involve the concession that these attorneys were guilty of contempt of the District Court because of the action of the state court.

They could not be found guilty because they believed and declared their belief that the state court had jurisdiction and that the District Court had not. Granting that they were mis- taken, it does not follow that their mistaken conviction con- stituted contempt. In point of fact the state court agreed with them, and would certainly not have entered orders of whose validity it entertained any reasonable doubt.

The distinction between the exclusive jurisdiction of the court in bankruptcy, proceeding, as it were *in rem*, to deter- mine the *status* of a debtor and his assets, and the jurisdiction over property subjected to particular liens, and the like, exer- cised by courts of concurrent jurisdiction, was probably thought by them not to apply in the circumstances existing here, and advice based on that opinion could not in itself constitute con- tempt.

What evidence is there that these attorneys, or either of them, gave any advice or took any action in bad faith, not in the honest discharge of their duty as counsel, but with the de- liberate intent to have the Federal court set at defiance and its orders treated with contempt ?

When Mr. Watts returned from Indianapolis he had been disabused of his conviction that the District Court would modify its order of February 11, when fully informed of the actual situation of the suit in the state court, and the participation in the proceedings therein of the creditor on whose application that order had been granted, and he appears to have earnestly sought to bring about the delivery over of the property, the discharge of the Trust Company, and the withdrawal from the record of the petition and order of February 14.

But he realized, when about to appear before the state court,

that his promise to endeavor to bring about the surrender of the property had been made under the pressure of expediency, and not by reason of change of judgment, and that he had placed himself in the embarrassing position of acting without leave and in disregard of the limitations of the order he had himself framed and procured to be entered. This led him to request Mr. Sachs to accompany him as his friend to New Albany, and assist in representing his situation in as favorable a light as possible to the state court. It is not disputed that Mr. Sachs visited New Albany solely in obedience to the dictates of friendship, and that he had no connection whatsoever with the litigation.

The result was, however, and it might well have been anticipated, that it appeared to the state court that its jurisdiction had been treated cavalierly by the attorney who had represented the original complainant, who had insisted that the court retained jurisdiction, and who could not deny that he was of the same opinion still. It was then, and on the twentieth, that Mr. Sachs, without the assent or connivance of Mr. Watts, unless suspicion be allowed to supply the want of proof, signed and verified a certain statement by the United States Tube Company, which represented that the Trust Company had " wrongfully, unlawfully and without leave of this court " turned over the possession to Connor, and prayed for its removal, and the appointment of a successor. This statement is recited in the order of that date entered by the judge of the state court, disallowing the application of the Trust Company to resign because of its action " without leave or permission," and stating that " the judge of this court, upon his own motion and because of the open contempt of said receiver for the orders, judgment and process of this court, does now order and direct that said receiver be and it is hereby removed from its trust." The Trust Company was ordered to account immediately for all the assets, and Kelso was appointed as receiver in succession by the judge " upon his own motion," and directed to demand possession of the property, and in case of refusal to report to the judge for further action in the premises. This was followed by the qualification of the new receiver, the de-

mand on Connor, the report of his refusal, the issue of the writ to the sheriff, and its execution.

Mr. Sachs testified that on the 19th the judge of the Circuit Court insisted on retaining the property and in declining to approve of the promise Mr. Watts had made; that when it was known that the property had been delivered the judge still declined to discharge Mr. Watts; that on the forenoon of the 20th the judge announced that he had made up his mind to remove the Trust Company and appoint another receiver; that he, Sachs, expressed the opinion that if the judge did that the better procedure would be for the new receiver to interplead in the District Court, setting up all the facts from the beginning and obtaining a determination in that court; that the judge asked Kelso to bring the facts in respect of the delivery of the plant to the official knowledge of the court, when he would remove the Trust Company and appoint Kelso. That in the afternoon Kelso desired him to sign the statement bringing the facts to the court's notice, which he, Kelso, objected to doing, because he was to be appointed receiver, and Sachs signed it supposing the course to be followed would be an application to the District Court in the nature of an interpleader; that he did not know what became of the paper and did not know, until after the commencement of the pending proceedings, what order had been entered upon it; that he did not know that any proceedings were contemplated or in course of preparation or prepared with the view of retaking the property; and did not advise or assist in any such, or believe any such would be undertaken.

In seeking to extricate Mr. Watts from his anomalous position, Sachs found himself involved, by the attitude of the state court, in similar embarrassment, for the state court adhered to its views as to jurisdiction, and insisted that it had never voluntarily yielded the position it occupied, which afforded the basis for testing the question. It does not seem to have occurred to Sachs that the mere effort to get an issue which could be transmitted to the District Court for determination subject to petition for review or such other appellate remedy as the bankruptcy act provided, could be regarded as

contempt of that court, and want of intention to commit contempt is entitled to great weight in such circumstances.

There is some conflict of evidence as to Sachs' participation by way of suggestion in the preparation of papers on the twentieth, or knowledge of the preparation of the final order and writ, but, without attempting to review the evidence and pass upon its weight, we find nothing in this conflict to justify the conclusion of an intention to contemn.

State courts are entitled to the assistance of the gentlemen of the bar in the maintenance of their dignity and jurisdiction, and the fearless discharge of their duty by the latter should not be shaken by liability to punishment for mere errors of judgment in rendering such assistance.

The presumption on the verified response and plea of Sachs, which was sustained by his testimony, was that he had not been in any way a party to the dispossession of Connor, and had not advised it or expected it; that he not only had not intended any contempt, but had committed none. And as the record of the state court showed that the orders were entered by the judge of that court "upon his own motion," that presumption could not be overthrown without collaterally impeaching the record, and that we think was inadmissible.

It has been already assumed that the bankruptcy proceedings operated to suspend the further administration of the insolvent's estate in the state court, but it remained for the state court to transfer the assets, settle the accounts of its receiver and close its connection with the matter. Errors, if any, committed in so doing could be rectified in due course and in the designated way.

We cannot but express our regret at the unfortunate collision between the two courts and the belief that the considerate observance of the rule of comity is adequate to avert such occurrences.

We are of opinion that there was no legal evidence to sustain these convictions for contempt, and the order in each case must be

*Petitioner discharged.*

MR. JUSTICE HARLAN, concurring.

I concur in that part of the opinion of the court which shows that there was no evidence whatever upon which to base a judgment for contempt against Watts and Sachs, or either of them. That view of the evidence is sufficient to dispose of the case without reference to any other question arising on the record. My concurrence in the judgment discharging the petitioners is solely on the ground just stated.