## PUNISHING COUNSEL FOR CONTEMPT IN THE PERFORMANCE OF A PROFESSIONAL DUTY.

[Circuit Court of Lucas County.]

THOMAS H. TRACY ET AL v. THE STATE OF OHIO.

Decided, July 21, 1906.

*Contempt—Attorney and Client—Professional Ethics—Reduction of Sentence—Discretion of Court—Duty of Counsel Toward a Client Unjustly Punished—Good Faith Sufficient Ground for Action—Personal Knowledge of Trial Judge as to Falsity of Charges Immaterial—Proper Procedure—Necessary Findings in Support of Judgment for Contempt.*

1. Inasmuch as a court has discretion to revise, increase or diminish a sentence during term and before it has gone into operation, it follows that attorneys representing one under sentence have the right to invoke the exercise of this power, and this may properly be done by motion.
2. Charges affecting the court may be strictly or substantially true and yet involve the one making them in contempt, if they are not made in due course of procedure and for legitimate and justifiable ends.
3. There is, however, not only justification in such a course, but counsel would be recreant to their sworn duty as officers of the court if they did not urge, in proper language and spirit, the vacation of a sentence which, in their honest belief, is excessive, and was based on a plea of guilty improperly obtained, and pronounced by a judge actuated by improper motives.
4. Counsel so acting in entire good faith can not be subjected to proceedings in contempt, notwithstanding the charges they put forth prove ill-founded, and were false to the personal knowledge of the judge at the time of the filing.
5. Nor will a judgment stand for contempt against attorneys, based upon their manner of performing a professional duty, unless there is a statement or finding in the journal entry or bill of exceptions, setting forth that the said attorneys knew or had reason to believe their charges were unfounded, or that they acted in bad faith in presenting them.

WILDMAN J.; HAYNES, J., and PARKER, J., concur.

In approaching the consideration of the important questions raised by the unfortunate controversy which has found its way

to this court, we may perhaps clarify the atmosphere to some extent by the enunciation of a few general principles which we believe to be thoroughly grounded in justice and good sense and amply sustained by judicial authority.

1st. The trial court had judicial discretion after sentence and at the same term to revise and modify the penalties imposed on the original defendants convicted under the anti-trust law. This rule is established beyond controversy by the case of *Lee* v. *The State of Ohio*, 32 O. S., page 113, as we read in the first paragraph of the syllabus:

"Where a court, in passing sentence for a misdemeanor, has acted under a misapprehension of the facts necessary and proper to be known in fixing the amount of the penalty, it may, in the exercise of judicial discretion and in furtherance of justice, at the same term, and before the original sentence has gone into operation or any action has been had upon it, revise and increase or diminish such sentence within the limits authorized by law."

The judge rendering the opinion says, on page 116:

"The refusal of the court to allow the defendant to withdraw his plea of guilty, and again plead not guilty, rested in the sound discretion of the court."

We need not fortify this position, for it was substantially conceded in argument by attorneys for the state that the court below had discretion to do these things. In view of these adjudications and concessions in argument, it is, in our judgment, at present unnecessary to consider the applicability of the statutory grounds for new trial after conviction. The court recognized its discretionary power, with or without express statute, by revising and modifying the sentences after they were made and before the motions claimed to be contemptuous were filed.

2d. If the court had such discretionary power it could entertain and consider a motion invoking it.

3d. Attorneys for the defendants below, recognizing such discretionary power in the court after the sentence had a right to invoke the exercise of that power.

4th. The natural, proper and regular way to invoke it was by *motion* addressed to the *court*.

5th. Charges that are strictly or substantially true may involve the person making them in contempt if they are not made in due course of procedure for legitimate and justifiable ends. Many of the cases cited to us are of this character, and therefore give us no aid here.

In elaboration of these principles as to the power of the court and the rights and duties of counsel, we are clearly of opinion that the latter had no right to file motions containing indecent, profane, insulting or contemptuous expressions; but that they had the right, and it was their duty as attorneys under the oaths which they had taken, to urge all matters of fact and law which in their honest judgment ought to weigh with the court and induce the granting of the motions. If among those matters were honest claims, well or ill founded, that the statute under which the indictments were had was unconstitutional; that the pleas of guilty were improperly obtained; that the sentences were excessive; or that the judge in the imposition of the sentences had been actuated by improper motives, counsel would have been recreant in their sworn duty as officers of the court if they had refrained from presenting those claims. The principle is not different from that governing the filing of affidavits that judges are prejudiced, or that upon the trial the judge has committed errors or irregularities. In every such instance it may be said that there is some imputation upon either the fairness or intelligence of the judge. But the filing of the affidavit or motion is not, if offered in good faith, insulting or contemptuous. It is an appeal, rather, to the assumed desire of every just and upright judge as promptly as possible to undo a wrong.

Any knowledge possessed by the judge as to the truth or falsity of the statements, or, more precisely, the correctness of the claims of counsel, does not meet the question. It is not the knowledge of the judge, but the good or bad faith of the attorneys, that is vital to the question whether there was or was not contempt. It is the conduct of the attorneys that is under inquiry and the spirit and intent with which they did the act are involved.

This court has heretofore, in the case of *Hunt* v. *The State,* 5 C. C.—N. S., 621 (638), expressed its views as to the current of authority on this precise matter, in the following words:

"The authorities give many illustrations of what are and what are not acts of contempt, and they are not in entire harmony, but so far as we have been able to examine, where one is pursuing in an orderly and decent way and in good faith, what he supposes to be his right in a court of justice, he is not guilty of contempt though he falls into error and violates the rules of court and even statutes (not penal) without number; but to constitute contempt in such case, there must be something in the manner of doing the thing, or something in the circumstances under which it is done, that it must be disrespectful to the court, or a hindrance to the administration of the affairs of the court, and the act must be done willfully and for an illegitimate or improper purpose."

The affirmation of this decision by the Supreme Court (72 O. S., 643), without report, may perhaps be deemed at least a tacit approval of his view.

The Supreme Court of the United States in *In re Watts,* 190 U. S., 1, adds the weight of its high authority:

"The preservation of the independence of the bar is vital to the due administration of justice, and its members can not be imprisoned for contempt for error in judgment when advising in good faith and in the honest belief that their advice is well founded."

Coming to the question of whether counsel acted in good or bad faith in the matter under inquiry, we may properly again refer to the opinion heretofore expressed in the Hunt contempt case, *supra,* page 643:

"It is a *quasi*-criminal proceeding. The presumptions are all in favor of the person charged with the offense, *i. e.,* in favor of innocence. It is not a case of the character where a court reviewing the conviction is to assume, in the absence of evidence to the contrary, that the action of a tribunal below was correct and lawful. It is a case where the guilt of the person convicted must appear affirmatively in the record."

In the case of *Springer* v. *Avondale,* 35 O. S., 620, the Supreme Court held that a judgment based on finding of fact is

erroneous, unless the facts found are sufficient in law to warrant the judgment.

Referring to the record before us, there is a very clear and positive statement of the grounds on which the trial judge adjudged the attorneys guilty of contempt; but there is no statement or finding in the journal entries or bills of exceptions: (1) That the attorneys knew or had reason to believe that the claims made in the motions were unfounded; or, (2) That they acted in bad faith in filing and presenting them. Without such findings or a recital of some evidence to show such facts, the guilt of the plaintiffs in error is not apparent.

Counsel for the state, while conceding that the motions as to some of the claims embodied were altogether legitimate and proper, argue that they became contemptuous because of the embodying of charges that the judge permitted improper influences or purposes to enter into the measuring and fixing of the penalties on the defendants. We are not at present concerned with the actual motives of the judge. It is sufficient to justify the incorporation of these matters in the motions, if the attorneys framing the motions believed them to be proper grounds for orders vacating the sentences. They were entirely pertinent to the application for such orders.

It is urged that certain of the matter set forth in the motions respecting the motives and purposes of the judge in imposing the sentences, i. e., to compel the convicted ice dealers to return to their customers all they may have exacted in excess of what the judge deemed a fair price for the ice sold; to compel them to reduce their prices to a scale that the judge might deem fair and reasonable, and like purposes, is clearly contemptuous because it imputes to the judge corrupt and sinister motives and designs.

Fairness to the judge as well as to the attorneys requires an application of these cases of the usual rule that the language shall not be subjected to a strained construction in order to make it contemptuous, but that, on the other hand, if it is fairly open to a construction that makes it inoffensive or less offensive, it should receive that construction.

While we hold that the conviction can not stand because of the absence of finding or evidence of bad faith, and therefore need not enter into any task of construction to justify our judgment, still we deem it proper to remark that it seems to us that a judge might attempt to attain to the full measure of justice on behalf of all concerned or affected by compelling a restitution by an offender of the illegitimate profits of his wrongdoing, and a cessation of such wrongdoing, and that such attempt might be prompted by most praiseworthy motives, and need not involve any wrong intent, even if it should turn out that the judge erred in that he overstepped his authority in the premises. We do not discover, either in the substance or form of what is set forth in the motions in this regard, anything to justify the claim that the judge was charged with corrupt or sinister designs in thus attempting to accomplish the ends of justice for all concerned. True the motions charge that the judge acted upon insufficient data, and without lawful warrant, but that does not necessarily imply more than that he erred or blundered. Whether this phase of his action is fairly open to this criticism can not be determined until all the facts of the transaction are properly brought before us and carefully scrutinized and tested by the law. What we desire to express upon this point now is simply that it is not fair to any of the persons concerned to extract the harshest tone and the bitterest flavor possible from these charges.

It is said that the purposes of the judge were not susceptible of proof and that therefore it was an impertinence to assert the claims in that regard. Whether or not in support of the assertions evidence would have been competent, is a question which we need not stop to consider. A question of law as to such competency might properly be made by the motions, if made in good faith and in phraseology not offensive in any other way than as any legal charge of error, irregularity or misconduct may offend. If evidence could be properly offered in support of those claims the kind of evidence so admissible would perhaps not essentially differ from that with which courts and lawyers are familiar in like cases. Intent is to be determined from

words and conduct or other circumstances throwing light on mental action.

We should not lose sight of the fact that in the whole inquiry are involved primarily and in the most important degree the rights of prisoners on whose behalf motions are presented.

If attorneys are punishable for preparing and filing such motions on the ground that such conduct is contempt *per se*, it follows that their clients willfully participating therein are likewise punishable for preferring such petitions to a court either personally or through the agency of attorneys; that to thus invoke the aid of a court in behalf of their liberties they still further imperil their liberty; that their petitions may be brushed aside without ceremony and they punished summarily by fine or imprisonment, or both, for having presumed to sue for what they may have conceived to be justice and their rights.

The contention of counsel for the state logically resolves itself into this: that no matter how flagrant and corrupt may be the action asserted to have been committed by a judge, not only is the litigant against whom the wrong is alleged to have been pereptrated without remedy (for the road to the higher courts is not open to him unless he first give the trial judge an opportunity to undo his own wrong), but in his appeal for such justice he is, in the words of the last of the Roman peoples' tribunes, "answered by the lash."

Whether the contempt alleged here to have been committed is of a kind described in Section 5639 of the Revised Statutes, to be proceeded against without written charges or hearing and punished summarily (as was done in this case), or of a kind described in Section 5640 of the Revised Statutes, as "Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions," requiring written charges and hearing, as provided in Section 5641, we deem it unnecessary to inquire. But finding that the convictions are not sustained by evidence or finding that the defendants acted in bad faith and are therefore contrary to law, and that there are no charges formulated or written as a basis of the prosecutions, so that nothing would be pending to be remanded upon

364    CIRCUIT COURT REPORTS—NEW SERIES.

reversal, we therefore reverse the judgments, dismiss the proceedings, and order that the defendants be discharged.

In the foregoing reasonings and conclusions, we have endeavored to intimate no views not essential to the inquiry in the contempt proceeding, and our opinion and judgment must not be construed as any reflection upon the motives or conduct of the judge below, or intimation of irregularity, or error, further than as herein expressed.

*King & Tracy, Brown, Geddes, Schmettau & Williams, Smith & Beckwith,* and *Hamilton & Kirby,* for plaintiffs in error.

*L. W. Wachenheimer,* Prosecuting Attorney, *C. A. Seiders, Ralph Emery,* Assistant Prosecuting Attorney, and *C. H. Masters,* for defendant in error.