NEW RIVER COAL LAND CO. v. RUFFNER BROS.

(Circuit Court of Appeals, Fourth Circuit.   February 20, 1908.)

No. 757.

BANKRUPTCY (§ 217*)—PROCEEDINGS IN STATE COURT—STAY.
     The jurisdiction of the federal courts in bankruptcy in the administra-
tion of the affairs of insolvents and corporations, being essentially exclu-
sive, on a corporation being declared bankrupt, proceedings against it in
the state court, instituted to impose a lien on certain of the bankrupt's
property, were properly stayed.
     [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 323, 330, 340;
Dec. Dig. § 217.*]

Petition to Superintend and Revise, in Matter of Law, Proceedings
of the District Court of the United States for the Southern District of
West Virginia, at Charleston, in Bankruptcy.

A. M. Prichard, for petitioner.
W. D. Payne, for respondents.

Before PRITCHARD, Circuit Judge, and BRAWLEY and PUR-
NELL, District Judges.

(Circuit Court of Appeals, Fourth Circuit.   December 1, 1908.)

No. 757.

1. BANKRUPTCY (§ 391*)—ADMINISTRATION OF ESTATE—JURISDICTION OF COURT
     —STAY OF SUIT IN STATE COURT.
     The fact that a creditor of a bankrupt applied to a state court for a
stay of proceedings in a pending suit against the bankrupt, and that his
application was denied, does not affect the jurisdiction of the court of
bankruptcy to stay such proceedings on application of the same creditor.
     [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 391.*]

2. BANKRUPTCY (§ 446*)—ACTIONS AGAINST BANKRUPT—STAY.
   A District Court as a court of bankruptcy has exclusive power to determine whether a suit pending in a state court should be stayed or not, and the exercise of this power rests in the discretion of the judge, which will not be reviewed by an appellate court unless it appears to have been abused.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 446.*]

3. BANKRUPTCY (§ 391*)—ADMINISTRATION OF ESTATE—JURISDICTION OF COURT.
   The jurisdiction of courts of bankruptcy in the administration of the affairs of insolvent persons and corporations is essentially exclusive, and the District Court in bankruptcy has power to stay a suit in a state court instituted within four months prior to the bankruptcy proceedings which involves practically all of the property of the bankrupt, and to administer such property itself, even though such suit is for the enforcement of liens.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 391.*

   Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

On Petition for Revision of Proceedings of the District Court of the United States for the Southern District of West Virginia, at Charleston.

On the petition of Ruffner Bros., the Frank Payne Shoe Company, the Dawley Furniture Company, and Lowenstein & Sons, creditors, duly filed in the District Court of the United States for the Southern District of West Virginia, at Charleston, on the 25th of March, 1907, the Cataract Colliery Company, a corporation under the laws of the state of West Virginia was, on the 18th day of April, 1907, duly adjudged bankrupt. Theretofore on the 7th day of February, 1907, J. M. Clark and C. E. Krebs, partners under the firm name of Clark & Krebs, had filed their bill of complaint in the Circuit Court of Fayette county, W. Va., against the Cataract Colliery Company, a corporation, New River Coal Land Company, a corporation, and the Frank Payne Shoe Company, a corporation. In this bill it was alleged that the Cataract Colliery Company is a West Virginia corporation, with authorized capital of $50,000, and a paid-up capital for which stock had been issued of $32,700. That the principal asset of the said colliery company was a lease of a thousand acres of land, let to the said company by the New River Coal Land Company, under the terms of which the Cataract Colliery Company was authorized to mine and remove the coal from the land upon payment of a royalty of eight cents (8¢) per ton, and a minimum rental of $5,000 per annum, which minimum rental, however, it was alleged, had been waived by the owners of the land. The bill further alleged that the colliery company had built on the lands leased 25 dwelling houses, a storehouse, tipples, side tracks, haulways, entries, and many vast improvements, and had equipped the plant with the necessary machinery and appliances for mining the coal from the land. That in addition to the interest in the lease the bill alleged that the colliery company had a small stock of merchandise, 7 mules, 40 mine cars, 3 mining machines, 1 set of blacksmith tools, and a few other appliances. Further, that the said colliery company, in order to carry on its operations upon the leased land, had been necessitated to borrow money, and had become largely indebted and unable to pay its just and legal debts, which, as alleged, amounted to about $36,000. The bill further alleged that the colliery company was indebted to complainant in the sum of $11,662.26. That it owed the Charleston National Bank of Charleston, W. Va., $6,200, which was indorsed by plaintiffs. That it owed Abney, Barnes & Co. $812.83, which was indorsed and guaranteed by plaintiffs. That it owed Louis Hubbard & Co. $456.98, which had been indorsed and guaranteed by plaintiffs. That it owed to the defendant the Chesapeake & Ohio Coal & Coke Company the sum of $4,000, which had been indorsed and guaranteed by the plaintiffs. And that in addition it owed various and sundry creditors for goods, merchandise, etc.,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

all together amounting to $36,000, as above stated. The bill further alleged that the creditors of the Cataract Colliery Company were pressing the company for payment of their claims, and that the defendant Frank Payne Shoe Company had instituted suit at law against the company for the debt due the said shoe company, and that other creditors were threatening to bring suits to enforce their claims. Further that the said colliery company had no money and no assets, except its coal plant and the personal property described, and that by reason of the cost of mining coal, etc., it had been unable to meet its obligations, and was, at the time of the filing of the bill, totally unable to pay any of its obligations other than its laborers and miners for work. The bill further alleged that by reason of the provisions of the lease under which the Cataract Colliery Company was operating it could not transfer or sell the lease or coal plant without the consent of the owners of the land, and that, in the event the creditors of the Cataract Colliery Company should obtain judgments and executions, the only property available to meet such executions would be the personal property above described, and which, it is alleged, would be totally insufficient to pay the debts. Thereupon the prayer of the bill was that receivers be appointed to take charge of the coal plant and property of the Cataract Colliery Company, with authority in the receivers to continue the operation of the coal plant under the contract of lease, and from the proceeds to pay the running expenses, and that the balance, if any, should be held subject to the order of the court, and for further relief as prayed for in the bill.

Upon the filing of the bill the court, on the 9th of February, 1907, appointed L. L. Abbott special receiver of the property of the Cataract Colliery Company, and the said receiver took possession thereof pursuant to the decree, and continued to operate the mining plant by virtue of the authority thus conferred upon him.

On the 6th of March, 1907, the defendant the New River Coal Land Company filed its answer, which it also asked to be considered in the nature of a cross-bill. In this answer many of the allegations of the complainant's bill were denied, but the lease, as set out, was admitted. The defendant claimed, however, in the answer substantially that the Cataract Colliery Company had failed to comply with the terms of the lease; that it had not paid royalty on the coal mined; had left the taxes upon the property unpaid; and that, by reason of these and other failures to perform the contract according to the terms, the lease to the company had terminated and become forfeited to the New River Coal Land Company, and that the said last-named company had a right, under the terms of the contract, by reason of the default of the colliery company in the performance of the stipulations, to re-enter without notice upon the premises, and to take possession of and have and hold all the property of the said colliery company located upon the leased premises as liquidated damages for the default. Others of the defendants named also filed answers in which debts were alleged to be due from the colliery company, or rights to have certain obligations of the colliery company carried out.

On the 9th of February, 1907, as appears from the record, the special receiver reported to the court that it would be impossible for him to continue the operation of the coal mines of the Cataract Colliery Company without the expenditure of large sums of money and without authority to purchase supplies, etc. Thus the status of the case in the state court appears to have remained until the 10th of May, 1907, after the adjudication in bankruptcy, when Ruffner Bros., as creditors of the Cataract Colliery Company, filed a petition in the circuit court of Fayette county, in the said chancery suit, and prayed that the proceedings therein might be stayed until the District Court of the United States, sitting in bankruptcy, determined the questions arising between the creditors and the said Cataract Colliery Company, bankrupt, and asked that the New River Coal Land Company and others be restrained from further proceeding in the case and from disposing of the property of the said Cataract Colliery Company.

The prayer of the petition of the Ruffner Bros., was denied by the circuit court of Fayette county. On the same day the said circuit court in the said cause entered a decree of forfeiture, in which it was ascertained that the

Cataract Colliery Company, in violation of the terms of the lease which was set up by the New River Coal Land Company in its cross-bill, had defaulted in the payment of royalty and taxes under the lease, by reason of which the said New River Coal Land Company had elected to terminate and have declared forfeited the said lease; and thereupon the court ordered and decreed that the said lease be forfeited, and that said New River Coal Land Company have the permanent possession of the real estate and lands mentioned and described in the lease because of the forfeiture, and so forth. It appears from the record, however, that said lands and property of the bankrupt still remained in the hands of the special receiver, and were in his custody and possession undelivered to the New River Coal Land Company on the 2d day of July, 1907, when the Ruffner Bros., as creditors, presented their petition to the District Court of the United States for the Southern District of West Virginia, in substance as follows:

That the Cataract Colliery Company had been adjudged bankrupt as before stated, and that no trustee of the estate had been appointed. That the suit of Clark & Krebs before referred to had been brought as stated, and proceedings had therein as set forth, including the appointment of the special receiver, the filing of the petition by Ruffner Bros. for stay, and the denial thereof by the court, the decree of forfeiture, etc.

It is further set forth in the petition: That the debts of the Cataract Colliery Company aggregate about $60,000; that the value of the property of said company is greater than the claim of the New River Coal Land Company, and that the lien claimed by the said last-named company is not valid; that the leasehold and personal property are assets which should be administered for the benefit of the general creditors, and that a sale of the property would sacrifice the same to the detriment of the general creditors, if made by the special receiver.

Upon this petition the District Court was asked to stay by its order further proceedings in the suit in the circuit court of Fayette county, and also to enjoin the New River Coal Land Company from further prosecuting said suit, and for such other relief, etc. In response to this prayer, the District Court entered the following order:

"In re Cataract Colliery Company, Bankrupt.

"This day Ruffner Brothers presented their petition in the above-entitled cause, and the same is ordered filed.

"And it appearing from said petition that an injunction is prayed for to restrain the prosecution of a certain suit pending in the circuit court, in the county of Fayette and state of West Virginia, in which Clark & Krebs are plaintiffs and the New River Coal Land Company, a corporation, is defendant, and as such defendant has filed a cross-bill in said suit praying for affirmative relief.

"Upon consideration of said petition and exhibits therewith filed, it is ordered that the New River Coal Land Company, its agents, servants, attorneys, and counselors, be, and each of them are, inhibited and restrained from, taking any further steps or proceedings in said suit now pending as aforesaid, for the purpose of causing Special Receiver L. L. Abbott or any other person to turn over and deliver to the New River Coal Land Company, its agents, servants, and employés, the personal property of the Cataract Colliery Company, or from causing a sale of said personal property by the said special receiver or other person, until twelve months after the 18th day of April, 1907, the date the said Cataract Colliery Company was adjudged a bankrupt, or if within that time the said Cataract Colliery Company applies for a discharge, then until the question of such discharge is determined or until the further order of this court in the premises. It is further directed that a copy of this order be served upon the New River Coal Land Co., and when so served the same shall be sufficient notice hereof."

The petition is filed here to superintend and revise in matter of law the foregoing proceeding in the United States District Court, and the grounds assigned by the petitioner are:

"(1) Because application for said stay and injunction was made in the first instance to the circuit court of Fayette county, W. Va., and was, by that

court, refused; and the decree refusing the same has not been reversed, set aside, or appealed from, but is still in full force and effect. Such refusal thereby became res adjudicata so far as to render the District Court of the United States for the Southern District of West Virginia without jurisdiction to act upon the said petition subsequently submitted to it.

"(2) Because said order attempts to stay proceedings to enforce, in rem, in said circuit court of Fayette county, W. Va., a valid lien not affected by the bankrupt law; and also stays a claim in said proceeding from which a discharge would not be a release, and upon property which the said circuit court of Fayette county had taken possession of before, and was administering at the time of said bankruptcy and said injunction.

"(3) Because the circuit court of Fayette county had, before the commencement of said bankruptcy proceedings, acquired jurisdiction of the parties and possession of the property affected by said stay, to which property your petitioner had, also before the commencement of said bankruptcy proceedings, asserted an adverse claim by its said answer and cross-bill filed in said circuit court of Fayette county as aforesaid."

A. M. Prichard and John S. Eggleston (Braxton, Williams & Eggleston, on the briefs), for petitioner.

W. D. Payne, for respondents.

Before PRITCHARD, Circuit Judge, and WADDILL, and BOYD, District Judges.

BOYD, District Judge (after stating the facts as above). We cannot consent to the proposition laid down as the first ground assigned by the petitioner in this case—that the action of the state court upon the petition of Ruffner Bros., refusing to stay the proceedings in the case of Clark & Krebs, is final. If such was the law, then it would be within the power of the state court, in many instances, upon the action of a single creditor, to divest the District Courts of the United States of jurisdiction to administer the estates of bankrupts for the benefit of all the creditors. It is our opinion that notwithstanding this action of the state court the judge of the District Court, sitting in bankruptcy, had full power upon the application of the bankrupt itself, of creditors, or of the trustee, in case one had been appointed, to take such action as in the discretion of the court was necessary for the preservation of the bankrupt estate, the determination of existing liens, if such there were, and the collection, custody, and distribution of the bankrupt's estate in the manner and to the ends contemplated by the bankruptcy law. In the act forbidding courts of the United States to stay proceedings in a state court, the courts of bankruptcy are specifically excepted, and the bankruptcy law of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) expressly confers upon these courts the power to issue injunctions to stay proceedings within this exception. We do not deem it necessary to further discuss the proposition stated in the first assignment of error.

Coming, then, to the other two grounds assigned by the petitioner and treating them together, we are also of the opinion that, in view of the circumstances and conditions attending this case, they cannot be upheld. The court of bankruptcy has exclusive power to determine whether a suit pending in the state court should be stayed or not, and the exercise of this power rests in the discretion of the judge.

It is true that this discretion can be reviewed by a Circuit Court of Appeals on petition for review, but will not be interfered with by the appellate court unless it appears that it has been abused. Loveland (3d Ed.) p. 109, notes 23 and 24. A stay of a suit pending in the state court effected by an injunction issued by a court in bankruptcy is not a dismissal of the suit. It does not defeat the cause of the action pending in the state court; it merely suspends the proceedings in the state court so long as the injunction is in force. If, therefore, in the further proceedings in the bankruptcy court the petition in bankruptcy is dismissed, or if the injunction is dissolved, or if, in the end, the bankruptcy court should determine that the basis of the suit in the state court is a claim against which the discharge in bankruptcy is not a release, then the case pending in the state court may proceed as if it had not been interrupted. If, however, a bankruptcy court holds that the claim upon which suit is brought in the state court is discharged, then the bankrupt may go into the state court and plead his discharge as against the recovery. See note 60, p. 113, Loveland (3d Ed.).

Thus far what we have said applies more particularly to cases in which an injunction is sought to stay a proceeding in a state court, to the end that the bankrupt himself may have the benefit of the stay, where a personal judgment is sought against him, so that, if the suit in the state court is based upon a provable claim and one against which the discharge in bankruptcy would operate, an opportunity, as before stated, would be afforded the bankrupt after his discharge to go into the state court and set it up as a defense in the action. The right of the court of bankruptcy to enjoin proceedings in a state court, in order to administer the estate of the bankrupt through the instrumentalities of the general bankruptcy law, is founded upon a different reason. The prime purpose of the bankruptcy act is to secure an equal distribution of an insolvent's estate among the creditors, and it is not only a power conferred upon the court in a bankruptcy proceeding to take jurisdiction of the unincumbered property of a bankrupt, but also of property to which liens attach, provided the judge of the court in bankruptcy shall determine that such property should be administered by that court. It has not unfrequently been the case that the bankrupt courts have issued injunctions to stay proceedings in a state court, to foreclose mortgages, to enforce other liens, and even to forbid state officers from proceeding with executions upon judgments where, in the opinion of the judge of the bankruptcy court, it was to the interest of the general estate to do so.

It is said in Re Watts & Sachs, Petitioners, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933, that "the jurisdiction of the courts in bankruptcy in the administration of the affairs of insolvent persons and corporations is essentially exclusive." In the course of the opinion in that case Chief Justice Fuller, speaking for the court, says:

"* * *; And the operation of the bankruptcy laws of the United States cannot be defeated by insolvent commercial corporations applying to be wound up under state statutes. The bankruptcy law is paramount, and the jurisdiction of the federal courts in bankruptcy, when properly invoked in the administration of the affairs of insolvent persons and corporations, is essential-

ly exclusive. Necessarily, when like proceedings in the state courts are determined by the commencement of proceedings in bankruptcy, care has to be taken to avoid collision in respect of property in the possession of the state courts. Such cases are not cases of adverse possession, or of possession in the enforcement of pre-existing liens, or in aid of the bankruptcy proceeding. The general rule as between courts of concurrent jurisdiction is that property already in the possession of the receiver of one court cannot rightfully be taken from him without the court's consent by the receiver of another court appointed in a subsequent suit, but that rule can have only a qualified application where winding-up proceedings are superseded by those in bankruptcy, as to which the jurisdiction is not concurrent."

In the present case Clark & Krebs, creditors, had filed a petition against the Cataract Colliery Company in a state court of West Virginia, and in that proceeding the court had appointed a special receiver of the property of the said company. As above set forth, the New River Coal Land Company filed its answer and cross-bill in the suit, and set up a claim thereby to the entire property of the colliery company, basing the claim on amounts alleged to be due for royalties accruing under a contract of lease, for taxes paid, and for forfeiture of all said property as liquidated damages for the failure of the Cataract Colliery Company to fulfill the terms of said lease. The whole proceeding in the state court from the commencement of the action was within four months of the filing of the petition in bankruptcy and of the adjudication of the Cataract Colliery Company bankrupt. It is evident from the character of the suit and the condition of the colliery company, as disclosed by the pleadings, that at the time of the commencement of the suit it was insolvent; it was unable to meet its obligations or to carry on its work, so alleged in the bill filed, and by the cross-bill of the coal land company its entire property was claimed by one creditor to the exclusion of all others.

The appointment by a court of a receiver for an insolvent debtor is an act of bankruptcy on the part of such debtor. Section 67 of the bankrupt act provides that a lien created by, or obtained in or pursuant to, any suit or proceeding at law, or in equity, including a judgment upon mesne process or a judgment by confession, which was begun against a person within four months before the filing of the petition in bankruptcy by or against such person, shall be dissolved by the adjudication of such person to be a bankrupt, if, first, it appears that said lien was obtained and permitted while the defendant was insolvent, and that its existence and enforcement would work a preference.

In order to meet the positions contended for by the petitioner in this case and the application of the authorities cited, we think it only necessary to call attention to the distinction which has been drawn as to the power of the District Court in bankruptcy to enjoin proceedings in cases of long standing in a state court, in which such court has acquired complete jurisdiction of the person and property of the bankrupt before the bankruptcy proceeding, and those which have been instituted within four months of the filing of the petition in bankruptcy. This distinction is emphasized in the case of Pickens v. Roy, reported in 106 Fed. 653, 45 C. C. A. 522, and again in 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128. In that case Pickens was ad-

judged bankrupt in October, 1899, upon his own petition. Theretofore, in 1889, Mrs. Dent, who during the litigation intermarried and became Mrs. Roy, filed her bill of complaint in the circuit court of Barbour county, W. Va., against Pickens, alleging certain indebtedness to her, and also charging the fraudulent conveyance of defendant's property. In the progress of the litigation she recovered judgment against Pickens for $9,000, and in 1900 a decree was entered by the said circuit court setting aside the fraudulent conveyance made by Pickens, and appointing a commissioner and receiver to take charge of and sell the property described in the fraudulent conveyance to pay the debt of complainant and other debts of the defendant. In this situation Pickens filed his petition in the District Court of the United States for the District of West Virginia, setting forth the facts generally in regard to the litigation in the state court and his adjudication in bankruptcy, and asking that the receiver and commissioner be enjoined from making sale of the property under the decree of the state court, and that further proceedings in the said case be stayed. A temporary restraining order was issued by the court aforesaid, but on the return thereof Pickens' bill was dismissed and he was charged with the cost, whereupon he appealed to the Circuit Court of Appeals for the Fourth Circuit. The judgment of the District Court was affirmed by the Circuit Court of Appeals on the ground that the case in which the injunction was sought was of long standing, and that the state court had acquired complete jurisdiction of the bankrupt and his property long before the bankruptcy proceedings. In the case Goff, Circuit Judge, delivering the opinion, says:

"The federal courts will not interfere with the administration of affairs lawfully in the custody and jurisdiction of a state court, nor will they permit the courts of the states to interfere concerning litigation rightfully submitted to the decision of the courts of the United States.

"The bankrupt act of 1898 does not in the least modify this rule, but with unusual carefulness guards it in all of its detail, provided the suit pending in the state court was instituted more than four months before the District Court of the United States had adjudicated the bankruptcy of the party entitled to; or interested in, the subject-matter of the controversy."

Upon appeal to the Supreme Court this decision of the Circuit Court of Appeals was affirmed, and the case is reported as before recited, and in the opinion, which was delivered by Chief Justice Fuller, the court reiterates with approval the last paragraph above quoted from the opinion of the Circuit Court of Appeals.

In the case here the whole proceeding in the state court was within four months of the time both of the filing of the petition in bankruptcy and of the adjudication, and the entire property of the bankrupt was involved in the litigation. The District Court, therefore, had the jurisdiction, and the right to assert it, to stay further action by the state court, and, if necessary to secure a just and equitable distribution of the bankrupt's estate, to take charge of the property to this end. The powers of the District Court in bankruptcy are ample to administer an estate with due regard to priorities or vested liens, and to protect all interests in such estate, whether they be legal or equitable.

For the reasons stated, we are of the opinion that the decree of the District Court should be affirmed.

Affirmed.