### GEALEY v. SOUTH SIDE TRUST CO.

### In re NATIONAL HOG CO.

(Circuit Court of Appeals, Third Circuit. February 1, 1918.)

### No. 2328.

1. **BANKRUPTCY** ⬅144—DEFECTIVE PROCEEDINGS—APPOINTMENT OF RECEIVER —EFFECT.

Where a receiver is appointed by a state court, and a petition in bankruptcy is subsequently filed, the proceedings in bankruptcy supersede those in the state court, yet as the receiver appointed by the state court is an officer of court, and the property in his hands is in custodia legis, he has no power to make surrender, but such surrender must be directed by the state court, and both it and the court of bankruptcy should be governed by the principles of comity.

2. **BANKRUPTCY** ⬅117(1)—PROCEEDINGS—SALES.

Where, as there were no funds to feed a herd of hogs belonging to the bankrupt and to conserve them, they were disposed of by the receiver, persons asserting claims to the hogs may be allowed to assert them against the moneys so realized.

On Petition to Revise an Order of the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

In the matter of the bankruptcy of the National Hog Company. Petition by T. M. Gealey, a receiver appointed by the state court to revise orders in favor of the South Side Trust Company, receiver in bankruptcy. Petition to revise dismissed.

Robert B. Ivory, of Pittsburgh, Pa., for petitioner.

Charles A. Woods and L. M. Alpern, both of Pittsburgh, Pa., for respondent.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. Stripped of all incidentals, this petition to revise finally narrows, first, to the question of the right of the District Court to appoint a receiver for the corporation against which a petition in bankruptcy was filed; and, secondly, whether such receiver was warranted in taking possession of a herd of hogs belonging to said company, which prior to the filing of said bankruptcy had

been seized by a receiver for said corporation, appointed by a state court.

[1] Without here reciting the several acts of the receivers of both courts and the differences between them which might have resulted in creating an unseemly conflict between the courts, whose officers they were, it suffices to say the state court, when the matter was called to its attention, properly announced the principle of jurisdictional control in such cases by quoting, with slight changes to fit the present case, the language of Chief Justice Fuller of the Supreme Court, in Re Watts, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933, as follows:

"The proceedings in bankruptcy superseded further proceedings in the state court, but the receiver had no power to make a surrender. He was the representative of the state court. The property in his hands was in custodia legis and he had only such authority as was given him by the state court. It remained for the state court to transfer the assets, settle the account of its receiver, and close its connection with the matter. He also said: 'Necessarily, when like proceedings in the state courts are determined by the commencement of proceedings in bankruptcy, care has to be taken to avoid collision in respect of property in possession of the state courts. Such cases are not cases * * * of pre-existing liens or in aid of the bankruptcy proceedings. The general rule as between courts of concurrent jurisdiction is that property already in possession of the receiver of one court cannot rightfully be taken from him, without the court's consent, by the receiver of another court appointed in a subsequent suit; but that rule can have only a qualified application, where winding up proceedings are superseded by those in bankruptcy, as to which the jurisdiction is not concurrent. Still it obtains as a rule of comity. * * *'"

The decision of the Supreme Court of the United States above referred to, of course, establishes the paramount jurisdiction of the District Court in bankruptcy in the present case; so its orders in the premises must stand. It also justifies the continued possession by that court of the hogs which the receiver obtained, and as they have since, by its order, been sold, it would be of no present avail to discuss the steps by which, without resort to the state court, the receiver obtained possession—steps which led the state court to add to what is above quoted the statement:

"Had it been recognized that frantic haste on the part of counsel was not necessary to protect the property, this unseemly conflict could have been avoided."

We are urged to lay down some rule of procedure in such cases hereafter. In the nature of things, this cannot be done farther than to call attention, as Chief Justice Fuller did in the case cited, to the fact that, although the paramount jurisdiction and the right of possession is in the District Court, yet, the goods of the bankrupt being already in possession of another court, there still exists, in the necessary change of possession, the rule of comity between courts, the application of which must, in the final analysis, be left to the good sense and considerate conduct of those controlling such comity-related courts.

[2] It has further been contended that certain stockholders of the National Hog Company had rights or claims to some of the hogs in the herd, and that their rights have been denied them by the seizure and sale of the herd. It is proper for us to add that it is quite apparent

that there was a pressing necessity to very promptly sell this herd, as there were no funds with which to feed the hogs. But the substitution of the purchase money for the herd in no way changes the rights of litigants, and, if any stockholders of the company had any rights, claims, or property in any of the hogs, it is certainly in the power, and we doubt not will be the wish, of the court below, if it be shown such rights exist, by proper proceedings and order to afford such persons an opportunity to litigate and establish their several rights.

Finding no reversible error in the orders made by the court below, the petition to revise is dismissed.