## In re QUEMAHONING CREEK COAL CO.

(District Court, W. D. Pennsylvania. March 18, 1926.)

No. 11810.

1. Bankruptcy ⊜347—As respects claimed priority of receivers' accounts, authority given receivers by state court prior to bankruptcy to issue certificates is without effect, where no certificates were sold.

Where state receivers in charge of an insolvent estate prior to bankruptcy have been authorized by the court to issue receivers' certificates, to be a first lien on the property, but none were sold, the authority given cannot aid the claim of receivers for priority of payment of their accounts in bankruptcy.

2. Bankruptcy ⊜20(2)—Bankruptcy court has jurisdiction to adjudicate claims of state receivers accruing before the bankruptcy.

Action of a state court in allowing accounts of its receivers, after it has lost jurisdiction over the estate by the supervising of bankruptcy, is not binding on the bankruptcy court, which has become vested with jurisdiction to adjudicate all claims against the estate.

3. Receivers ⊜92—Authority to operate private corporation by receiver should be given with caution.

Authority to receivers of a corporation, not a public service corporation, to continue operating, should be given with great caution, and if defendant is insolvent, consent of those interested should be obtained, particularly holders of prior liens.

4. Receivers ⊜92.

In respect to obtaining consent of court to continue operation of a private corporation by receiver, the trustee in a trust deed represents the bondholders.

5. Bankruptcy ⊜317—Receivers held not entitled to compensation for operation of insolvent coal company, where they received a salary for services as employees during receivership.

State receivers, operating the mine of an insolvent coal company, prior to its bankruptcy, under order of the court, though the net result was a loss, held entitled to allowance as a prior claim of the amount paid out for labor and supplies and fees of counsel, but not for compensation claimed for themselves, where each received a salary for services as an employé during the receivership.

In Bankruptcy. In the matter of the Quemahoning Creek Coal Company, bankrupt. On review of order of referee, disallowing account of state receivers as a preferred claim. Reversed in part, and affirmed in part.

Jos. Addison, of Baltimore, Md., and Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for bondholders' committee.

C. L. Shaver and Joseph Levy, both of Somerset, Pa., for state court receivers.

Boose & Boose, of Somerset, Pa., for bankrupt.

GIBSON, District Judge. On September 29, 1924, the court of common pleas appointed temporary receivers for the Quemahoning Creek Coal Company, on the ground of insolvency, and on October 13, 1924, the persons so appointed were made permanent receivers. On or about the latter date an order was made, by which authority was given the receivers to issue certificates to the amount of $15,000, which certificates were to be a first lien upon all property of the company. An order was also made by which operation of the mine of the company was permitted, and pursuant to this order the mine was operated by the receivers until January 9, 1925. On January 5, 1925, an involuntary petition to declare the company a bankrupt was filed in this court, and on January 26, 1925, the adjudication was made. After the bankruptcy petition was filed, this court appointed a receiver who took possession of the bankrupt's mine and its equipment.

On May 16, 1925, the state court receivers filed their account in the court of common pleas of Somerset county, in which they claimed an allowance of $2,500 to themselves, $1,500 for their counsel, and $5,120.91 to persons who had furnished supplies, etc., to them in preserving and operating the mine. To this account the trustee in bankruptcy filed certain exceptions, by one of which he alleged lack of jurisdiction in the court of common pleas to receive and confirm the account. The court, after hearing, dismissed the exceptions and confirmed the account. Thereupon the receivers made claim for the sum of $9,120.91 before the referee for Somerset county. They attached to the claim a copy of the record of the receivership in the court of common pleas, and contend that they are entitled to payment of the amount claimed in advance of the payment of all lienholders against the property of the company. Certain holders of bonds secured by a mortgage upon the company's property opposed the allowance of the claim, and the referee, after hearing, disallowed the claim as a secured debt, but allowed it as unsecured. As the property of the bankrupt was sold for less than enough to pay the bond-

holders, the effect of the order of the referee, if allowed to stand, would be a denial of the claims of the state court receivers. The ruling of the referee has been certified to this court for review.

[1] The court of common pleas, as stated supra, authorized the receivers to issue their certificates to the amount of $15,000. These certificates were never issued, and would require no notice, were it not for the fact that the receivers seem to found their claim upon them. The following is quoted from the claim filed with the referee:

"Note.—The receivers have duly executed receivers' certificates amounting to $15,000, of which certificates for $5,000 have been canceled, and a credit of $879.09 indorsed upon another $1,000 certificate. The remaining certificates, amounting to $10,000, they hold in trust for the unpaid creditors whose names appear in the foregoing account, and claim the same as a first lien upon the real estate of the corporation, now in bankruptcy, to the amount of $9,120.91."

The certificates not having been sold, and no proceeds of their sale having benefited the estate, the unissued certificates in the hands of the receivers are so much waste paper, and add nothing to the claim of the receivers, as we view the matter. That claim must depend upon the force and effect of the orders of the court of common pleas, by one of which they were appointed to conserve the estate of the coal company, and by the other to operate its mines, and by the nature of their obedience to those orders. In view of the allowance of the claim as an unsecured debt by the referee, without exception, our only task at this time is to determine whether or not the referee erred in refusing priority to it as against the mortgage existing when the receivers were appointed.

[2] In performing our present task, it has been urged upon us by counsel for the bondholders, in opposition to the claim of priority, that we are not concluded by the order of the court of common pleas confirming the account of the receivers in that court. This contention is well supported by decisions of unquestionable authority, and little doubt can exist as to its truth. Some misapprehension in this respect seems to have arisen from too cursory readings of dictum of Chief Justice Fuller in the opinion in the case of In re Watts and Sachs, 190 U. S. 1, 35, 23 S. Ct. 718, 727 (47 L. Ed. 933), as follows:

"It has been already assumed that the bankruptcy proceedings operated to suspend the further administration of the insolvent's estate in the state court, but it remained for the state court to transfer the assets, settle the accounts of its receiver, and close its connection with the matter. Errors, if any, committed in so doing, could be rectified in due course and in the designated way."

An examination of the whole opinion will disclose that Chief Justice Fuller did not intend to limit the exclusive jurisdiction of the federal courts, after adjudication, in bankruptcy matters, but merely to deprecate discourtesy to the state courts, by unnecessary haste and vigor in seizing property in the hands of their receivers before they have had opportunity to order the discharge of such receivers and delivery of the assets in their hands to the bankruptcy courts. If state court receivers are to obtain priority of payment for amounts due them, it must be on the theory that they have been relieved of the duty of accounting to the trustee in bankruptcy for such amounts.

"If beneficial services are allowed for, they are to be regarded as deductions from the property which the assignee is required to surrender, and in that way they gain a preference." Randolph v. Scruggs, 190 U. S. 533, 539, 23 S. Ct. 710, 712 (47 L. Ed. 1165).

"Even where the court which appoints a receiver had jurisdiction at the time, but loses it, as upon supervening bankruptcy, the first court cannot thereafter make an allowance for his expenses and compensation. He must apply to the bankruptcy court." Lion Bonding Co. v. Karatz, 262 U. S. 640, 642, 43 S. Ct. 641, 642 (67 L. Ed. 1151).

The immediately preceding is a quotation of a dictum of Mr. Justice Brandeis in the opinion. Authority for it is given in note 2, on page 642.

Having the foregoing principles in mind, we proceed to consider the claim of priority advanced by the receivers. As we view it, division of the claim is required. First in point of merit is that part represented by the amount due creditors of the state receivers, next is the amount due attorney for the receivers, and last the compensation claimed by the receivers for their own services.

[3] No question has been raised before this court as to the jurisdiction of the court of common pleas to entertain the bill filed therein and to appoint receivers to pre-

serve the property. It is urged, however, that no power existed to order the operation of the plant; that all amounts for which claim is made were for operating expense, as opposed to preservation expense, and consequently that no claim of priority for them is valid as against prior liens. We are not prepared to accept the proposition that power to order the operation of the plant by the receiver exists only in the case of public service corporations. But authority to that effect should be given with great caution, and where the ground of the receivership is insolvency, consent of those interested, particularly of holders of prior liens, should be obtained. The power to operate is granted in such case on the theory that it is essential to the proper preservation of the estate.

[4, 5] In the instant case, notice was given to the trustee for the bondholders, and to all but one of the individual bondholders. Counsel for the trustee was present and made no objection when the court made the order for the operation. The trustee was the representative of the bondholders. Wallace v. Loomis, 97 U. S. 146, 163, 24 L. Ed. 895. Under the circumstances the court had the right to assume general consent to the order. That the result may not have benefited the estate is not sufficient to justify a denial of credit to the receivers for expenses properly incurred by them under the order of the court, or, in itself, even to deny them compensation for their services. As the receivers have analyzed their account, the estate was profited to the extent of $859.13 by the operation of the mine; but in their analysis they have included the salaries of the superintendent of the mine and the manager as part of the expenses of caring for the property, instead of making them operating expenses.

It is somewhat difficult to see just why a mine, unoperated except for drainage, would require the services of a manager at $350 per month and a superintendent at $450 per month. The tangible loss occasioned by operation may, as claimed by counsel for the receivers, have been more than offset by the intangible gain to the property arising upon sale, by reason of the fact that the mine employés had been kept together and the mine was practically a going concern. Whether this be as claimed, or not, in the absence of any definite testimony to the effect that the expenses for which credit is claimed were not properly incurred, pursuant to the order of court, and not designed for the benefit of the property, we feel that the receivers are entitled to withhold the amount required to pay those who furnished the receivers labor or supplies.

We also see no good reason for denying compensation to the attorney for the receivers. His labor in the matter is admitted to have been great. The bondholders have opposed allowance to him, because he represented the creditors, who were the plaintiffs in the bill for the appointment of the receivers. These creditors, it is alleged, were desperately seeking to save something for themselves and other general creditors, under the direction of their counsel, and the net result was nothing but injury to the bondholders. Under such circumstances, it is contended, counsel is responsible for the bootless action taken, and is not deserving of compensation.

This contention does not appeal to us. The situation existing at the time of the filing of the bill seemed to require a receivership for the preservation of the property. It does not appear that counsel's judgment, rather than that of his clients, brought about the order to operate, nor is it to be presumed. We see no reason why the receivers should not be entitled to withhold a sufficient amount to pay him for his services.

This brings us to the compensation claimed by the receivers. Two of the three receivers were plaintiffs in the bill praying for the appointment of receivers, and also former employés of the company. Upon their appointment as receivers they allowed themselves salaries for their services in the mine, each equal to the amount paid when the mine was last operated, although no coal was taken from the mine during October, and only a fraction of a capacity production during the remaining 2½ months of the receivership. The third receiver, who was not an employé when the mine suspended prior to the receivership, was a resident of New York, and it was his duty to sell the coal produced by the receivers. From the beginning of the receivership he had a salary of $600 per month. In addition, he had a clerk and an office, at the cost of receivers.

The account shows sales of coal, exclusive of local sales, to an amount slightly less than $15,500, while the salary of the salesman receiver was almost $2,000. Each of the receivers, in addition to his salary, was paid a material sum on account of his expenses.

In view of the disclosure of the testi-

mony that the net result of the receivership was additional loss to lienholders, and that the receivers employed themselves at the same salaries they had received when the mine was running at full capacity, when, under them, it was running at less than one-half of its capacity, we feel that they have already been sufficiently paid, and that the referee was not guilty of error in refusing them priority in payment of the additional compensation claimed for themselves.

A decree will be drawn in accordance with this opinion.

### Decree.

And now, March 18, 1926, the ruling of the referee in bankruptcy rejecting the claim of Rush S. Rinard, Samuel C. Halverson, and J. Howard Magee, receivers, for the sum of $9,120.91 as a charge against the bankrupt entitled to payment in advance of all other charges, having been certified to this court, was duly heard and argued by counsel, and thereupon, upon consideration thereof, it was ordered, adjudged, and decreed as follows, viz.: That said order and ruling of the referee, in so far as it rejects and refuses, as a preferred claim, the compensation to the amount of $2,500 claimed by said receivers for their services as receivers, be and the same hereby is sustained, and in so far as said order and ruling rejects the claim as one entitled to priority of payment for sums paid out by, or due from, said receivers to divers persons for services or materials pursuant to the order of the court of common pleas appointing said receivers and directing them to operate the mine of the Quemahoning Creek Coal Company, amounting to the sum of $5,120.91, and for compensation to Joseph Levy, for services as attorney for said receivers, that said order and ruling be and the same hereby is reversed, vacated, and set aside.