COMMERCIAL TRUST COMPANY OF NEW JERSEY, trustee, &c.. complainant-respondent,

*v.*

ALBERT I. DRAYTON, trustee in bankruptcy of L. Wertheim Coal and Coke Company, defendant-appellant,

EAST BOSTON COAL COMPANY, WILLIAM T. PAYNE, MILL CREEK COAL COMPANY, WARREN DELANO, WILLIAM L. DANN and WILLIAM NEUGASS and BERTHA ISENSTEIN, executors of Max Isenstein, defendants-respondents.

[Submitted June term, 1918. Decided November term, 1918.]

1. Where a trustee in bankruptcy voluntarily submits himself to the jurisdiction of a state court having jurisdiction over the subject-matter of the controversy, he becomes bound by the adjudication of that court. The state court has full power to enforce its decrees in that respect.

2. Where such trustee receives moneys from receivers of the bankrupt, he must account for all of said moneys that were the proceeds of the collection of outstanding accounts and bills receivable covered by the chattel mortgage the validity of which was sustained in the state court.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lewis, reported in *88 N. J. Eq. 143.*

*Messrs. McDermott & Enright,* for the appellant.

*Messrs. Fisk & Fisk,* for the complainant-respondent.

*Messrs. Hartshorne, Insley & Leake,* for William T. Payne and East Boston Coal Company.

*Messrs. Vredenburgh, Wall & Carey,* for Warren Delano and Mill Creek Company.

*Mr. Pierre P. Garven,* for the executors of Max Isenstein.

The opinion of the court was delivered by

KALISCH, J.

This matter comes before us on an appeal taken by the trustee in bankruptcy of L. Wertheim Coal and Coke Company, a bankrupt debtor, from the decree of the court of chancery sustaining the validity of a certain chattel mortgage given by the bankrupt debtor to the Commercial Trust Company of New Jersey.

The appellant attacked the validity of the mortgage, in the court below, principally upon the grounds—*first,* that the court erroneously found that the bankrupt debtor was solvent at the time of the execution of the mortgage; *secondly,* that the affidavit to the mortgage stated the true consideration thereof; *thirdly,* that the mortgage covered the outstanding accounts acquired in the usual course of business subsequent to the mortgage.

The facts which are made the basis of the findings above mentioned are fully stated in a memorandum and in an opinion of the vice-chancellor. We concur in the result reached by him.

The court in the final decree ordered "that the defendant, Albert I. Drayton, trustee in bankruptcy of L. Wertheim Coal and Coke Company, forthwith account in this cause for all moneys in his possession or received by him from the collection of outstanding accounts and bills receivable due L. Wertheim Coal and Coke Company, or received by him from the receivers in bankruptcy of L. Wertheim Coal and Coke Company, and that Albert I. Drayton, trustee as aforesaid, after the allowance of said account, pay the amount shown thereby to the complainant or its solicitors, to be applied as provided in complainant's mortgage or deed of trust."

Enough has been quoted from the decree to illustrate the point made here by counsel of appellant, which is, that the provision in the decree requiring the bankruptcy trustee to account in the court of chancery for bankrupt assets which have lawfully come into his hands is erroneous.

The argument advanced by counsel of appellant in support of this point is substantially as follows: That although the court of chancery in this foreclosure action may conclude the trustee as to any *res* within its jurisdiction, nevertheless, as the decree is not only *in rem*, but is also *in personam* against the bankrupt trustee requiring him to account in the court of chancery "for all moneys in his possession" or received by him from the collection of outstanding accounts and bills receivable due (the bankrupt) or received by him from the receivers in bankruptcy of (the bankrupt), the decree virtually excludes the bankruptcy court from further jurisdiction over its own trustee with respect to his account of bankrupt assets received by him under the decree of the bankruptcy court.

And counsel add to this the assertion that there is nothing in the case to show the source of the moneys received, by the trustee from the receiver in bankruptcy, and that, in fact, a considerable part thereof was received from an ancillary receiver appointed by the bankruptcy court in New York, and is the re-

sult of the sale of the Harlem yard, in New York, with respect
to which the mortgage cannot possibly be a lien, because it was
never filed or recorded in the State of New York.

The fallacy of this argument lies, first, in the wrongful as-
sumption by counsel that the court of chancery by its decree
ousts the bankruptcy court of further jurisdiction over its own
trustee, respecting the assets of the bankrupt received by the
trustee. But this is clearly not so. The bankruptcy court still
retains jurisdiction over its own trustee in regard to such assets
of the bankrupt, as were not covered by the lien of the mort-
gage, and which, therefore, are still subject to be administered
in the bankruptcy court and distributable among the general
creditors of the bankrupt. But the situation here is that com-
plainant filed its bill to foreclose a chattel mortgage, in the state
court, which mortgage covered accounts owing and in the future
accruing to the bankrupt, before the filing of the petition in
bankruptcy, and the trustee in bankruptcy, voluntarily appeared
in the cause, and not only filed his answer to the bill, but, by way
of cross-bill, sought affirmative relief from the court.

The trustee had full authority to submit himself to the juris-
diction of the court of chancery.

Where a trustee in bankruptcy voluntarily submits himself
and his rights to the jurisdiction of a state court having juris-
diction of the subject-matter of the controversy, he becomes
bound by the adjudication, whether or not the decision of the
state court is favorable or unfavorable to him. *In re Reynolds,
133 Fed. Rep. 585* (at *p. 587*) ; *Mays* v. *Fritton, 20 Wall. 414;
87 U. S. (L. ed.) 389.*

The trustee is, therefore, in no position to lawfully avoid the
enforcement of the decree to account for all moneys received by
him resulting from the collection of accounts due the bankrupt
debtor, wheresoever the same may have been collected, for it ap-
pears that these accounts were properly adjudicated by the court
to be within the lien of the mortgage.

That the state court has full power to enforce its decree in this
respect is too obvious to warrant any further discussion. *Scott*
v. *Georges Creek Coal Co., 202 Fed. Rep. 251.* .

Secondly, the assertion by counsel of complainant in their brief that a considerable part of the moneys received by the trustee was received from an ancillary receiver, appointed in the State of New York, and is the result of the sale of the Harlem yard, in New York, and was not included within the lien of the mortgage, is not borne out by the testimony submitted in the cause. The testimony of the trustee on that point is, that he received from Mr. Perry, an ancillary receiver, of New York, $12,879.56, being a special account of collections made by him in New York.

Since there is no proof that this sum was wholly derived from the collection of outstanding accounts and bills receivable due the bankrupt debtor and within the lien of the mortgage, we, therefore, think that the decree is too broad in directing the trustee to account for all moneys received by him from the receivers in bankruptcy of the bankrupt, and should be limited to direct an accounting by the trustee for all moneys received from the receivers in bankruptcy, which are the proceeds of the collection of outstanding accounts and bills receivable, or of property otherwise, within the lien of the mortgage; and for this reason the decree must be modified in the respect indicated.

With this modification the decree is affirmed, with costs.

*For affirmance*—None.

*For reversal*—BLACK, TAYLOR—2.

*For modification*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, WHITE, HEPPENHEIMER, WILLIAMS—10.