In this case the defendant company was adjudicated insolvent and a receiver appointed to wind up its affairs, by order of this court duly entered August 4th, 1925. The receiver immediately qualified, took possession of the assets of the defendant, and undertook the performance of his duties.
Three weeks later a petition in bankruptcy against the defendant company was filed in the United States district court for this district; an adjudication of bankruptcy was made therein on September 14th, 1925, and trustees appointed November 18th, 1925.
December 3d 1925, the receiver filed in this court his report and account, setting forth what he had done and also the fact of the proceedings in bankruptcy and that demand was made by the trustees in bankruptcy for the assets in his possession; also asking that his account be approved and that allowances be fixed for his compensation and that of his counsel and for unliquidated expenses incurred for appraisals and audit of the defendant's books, and that he be authorized to turn over the remaining assets to the trustees in bankruptcy.
By an order of this court on December 29th, 1925, after due notice to all creditors and stockholders and to the trustees *Page 197 
in bankruptcy, the receiver's account was allowed and confirmed; the application for allowances was continued "until the trustees in bankruptcy shall have converted the property and assets of the defendant company into cash;" and the receiver was directed to turn over to the trustees in bankruptcy all of the assets of the defendant's estate in their possession (including an item of $3,146.10 in cash, as to which adverse claim had been made by a third party) excepting the cash in bank amounting to $1,398.25; with the provision that the assets so turned over to the trustees should be subject to the payment of such allowances as should later be made by this court, "and said allowances, when made and determined by this court, shall, to the amount thereof not paid out of the balance of cash in the hands of the receiver, be declared a preferred lien against the said moneys and the proceeds realized from the assets of said Kimberley Phonograph Company directed herein to be paid to said trustees in bankruptcy."
At the making of this order the trustees in bankruptcy appeared by their solicitors and filed express written consent thereto; as did also the audit company.
The receiver has now filed a supplemental report and account, in this court, showing that he has in his hands the sum of $2,304.38 (being the $1,398.25 retained as above set forth, plus accumulated bank interest thereon, plus a few collections which had been made but not credited by the bank at the time of the filing of the original report and account); and has applied (on notice to the trustees in bankruptcy and to the creditors and stockholders of the insolvent company) for the fixing of the allowances. The trustees have liquidated the bankrupt's assets.
The allowances asked for are as follows:
For the receiver, $3,500; for the receiver's solicitor and counsel, $2,500; for the auditing accountants, $2,448.79; for the appraisers ($250 each), $500; a total of approximately $9,000. He has in his hands less than $2,500; but asks that the allowances be decreed and that an order be made declaring them (or the unpaid balance), a lien on the assets *Page 198 
in the hands of the trustees in bankruptcy — pursuant to the terms of the consent order of December 29th, 1925.
The trustees in bankruptcy appear, by their solicitors, and object not only to the making of the order for allowances in the amount and in the form asked by the receiver, but to the making of any allowances whatever by this court: their contention being that this court is without power to make such allowances — under the authority of Isaacs v. Hobbs Tie Timber Co.,282 U.S. 734; Silberberg v. Ray Chain Stores, Inc., 54 Fed. Rep. 2d650; affirmed, 58 Fed. Rep. 2d 766; Moore v. Scott,55 Fed. Rep. 2d 863; Lion Bonding and Surety Co. v. Karatz,262 U.S. 640, and Bloch v. Bloch, 86 N.Y. Supp. 1047.
The proposition that this court, after an adjudication of bankruptcy, is without jurisdiction or power to fix the compensation of its receiver duly appointed on adjudication of insolvency prior to any bankruptcy proceedings, is one in which this court cannot concur and to which it cannot yield unless upon explicit and controlling authority. In the view of this court, the federal legislation does not purport, expressly or impliedly, to effect any such result; and even if it did, the constitutional validity of such an attempt would be, to say the least, open to serious question.
Of the decisions mentioned above, the first is by no means an explicit authority for the proposition of the trustee; the next two are not in point, for they involve federal equity receivers instead of receivers of state courts; the expression in the fourth is dictum; and the last is in nowise controlling upon this court.
The authorities in this state are uniformly in direct contradiction to the contention of the trustees. The two most recent decisions are Colton v. Bankshares Corporation, c.,108 N.J. Eq. 417; 155 Atl. Rep. 471, and Perfection GarmentCo. v. Crosby Stores, Inc., 109 N.J. Eq. 450. In accordance therewith, it is deemed that this court had, at the time of the accounting in 1925, and still has, at the time of the present application, jurisdiction to fix the allowances to its receiver, to the extent of the funds still in the hands of *Page 199 
the receiver, irrespective of the consent of the trustees. By that consent, made on a voluntary submission to the jurisdiction of this court, the trustees are bound (Commercial Trust Companyof New Jersey v. Drayton, 90 N.J. Eq. 264; 105 Atl. Rep. 241), from which it results that this court has the right to fix the allowances in question even beyond the extent of the funds in the receiver's hands.
Whether, or to what extent, a decree fixing those allowances can be enforced beyond the assets still in the hands of the receiver, without the concurrence of the United States court, are questions which need not be considered at this time. It will not be presumed that the agreement made will not be substantially performed.
That this court had a lien in 1925, on the assets in the hands of its receiver, for his compensation and his proper expenditures and liabilities incurred, is still the view of this court, and it was in 1925 the view of the trustees. Those assets (excepting the cash retained as stated) were turned over to the trustees in bankruptcy, by order of this court made upon the express consent of those trustees that the determination of those allowances should be deferred but should be later made by this court and when so made should be a prior lien upon the assets (or proceeds) in their hands, so turned over to them. For the trustees now to repudiate that agreement after having received the benefit of it, without every effort toward at least substantial performance, would be, in practical effect, to perpetrate a fraud upon this court. Under the circumstances it is to be expected of them that they make formal report of the circumstances to the United States court, and seek authorization from that court, for the performance of their obligation.
It may be that that court, under the view it holds on the question of jurisdiction heretofore mentioned, might perhaps find some difficulty in an exact performance of the agreement made by the trustees; but that it would regret the situation and would feel impelled to go as far as possible in remedying it — consistently with the maintenance of its jurisdiction — cannot be doubted. *Page 200 
The allowances which seem reasonable and justifiable, under the facts and circumstances which have been made to appear before this court, and which will be made to the receiver, are as follows:
For his own services, $1,000; for the services of counsel, $2,000; for his unliquidated liabilities incurred, $100 for appraisers, and $2,448.79 for auditors and accountants. (The latter filed verified proof of claim, which is undisputed and seems reasonable.)
The period during which the receiver was responsible for the preservation of the assets of the company was about three and a half months; the assets were inventoried at some $200,000. He collected on accounts receivable, and from sales, about $9,000, and disbursed about $4,500. The period prior to the adjudication in bankruptcy (which terminated his right to proceed further, personally or by counsel, with the administration of those assets and the problems — other than preservation), arising therefrom, was six weeks. The unliquidated assets turned over to the trustees have produced on liquidation some $40,000. During the six weeks prior to the adjudication in bankruptcy a very considerable amount of time and effort was spent by counsel — and to a lesser extent by the receiver — in the investigation of the company's books and affairs and the investigation and development of the liabilities of others to the company in the course of which (and in aid thereof), the audit and examination of the company's books by the expert accountants was required. All of this, admittedly, later enured largely to the benefit of the trustees.
An order will be made adjudicating these allowances and directing the receiver to apply the moneys remaining in his hands on account thereof; and further directing the receiver to apply by petition to the federal court, reciting all of the circumstances and praying an order directing the trustees to pay to the receiver, out of the proceeds of the assets heretofore turned over to them by the receiver, the unpaid balance of such allowances. This latter is in accordance with the orderly procedure and courtesy which is to be expected of the comity between the courts. *Page 201 
An added measure of responsibility rests upon the attorneys for the trustees in bankruptcy to see that every effort is made on the part of the trustees to secure substantial performance of the agreement — in view of the fact that the attorneys are also the solicitors by whom the trustees have appeared in this court, and consented to the order of December 29th, 1925. They owe a duty to this court equally as well as to the federal court — and it is not doubted that they will endeavor fully to discharge that duty.
It is of course recognized — and should be mentioned — that at the time of the agreement and decree in 1925, that course was deemed proper by both courts and sanctioned by the common practice therein; and that only recently (at least in this district) has the view of the federal court in this behalf been altered, in order to conform to its belief as to the effect of some comparatively recent opinions by the supreme court of the United States.